**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIANGSU HUARI WEBBING LEATHER CO., LTD., | Case No. 1:23-cv-02605-JLR |
| Plaintiff, | |
| v. | |
| JOES IDENTIFIED IN SCHEDULE A, | |
| Defendant. | |

**NINJASAFE LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR BOND
DAMAGES, SANCTIONS, AND ATTORNEY FEES**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND................................................................. 3

III.    RELEVANT PROCEDURAL HISTORY .................................................................. 4

IV.     PLAINTIFF'S RECORD OF LITIGATION MISCONDUCT .................................... 6

V.      LEGAL STANDARDS FOR AWARDING BOND DAMAGES, SANCTIONS, FEES 12

        A.      Wrongfully Enjoined, NinjaSafe is Entitled to Bond Damages ............................. 13

                1.      NinjaSafe Was Wrongfully Enjoined Because Plaintiff Abrogated the TRO
                        and Dismissed NinjaSafe Before Substantive Litigation Commenced. ........ 14

                2.      NinjaSafe's Damages Were Proximately Caused by Plaintiff's TRO That
                        Prevented NinjaSafe Sales for Nine Days..................................................... 15

        B.      Plaintiff's Litigation Misconduct Makes it Appropriate to Award Sanctions in the
                Form of Dismissal With Prejudice of NinjaSafe and to Award Attorney's Fees. ... 17

                1.      Plaintiff's Litigation Misconduct Warrants Sanctions in the Form of
                        Dismissal With Prejudice. ............................................................................ 18

                2.      Plaintiff's Litigation Conduct Makes the Case Exceptional and an Award of
                        Attorney Fees Appropriate. .......................................................................... 20

VI.     CONCLUSION................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Agiwal v. Mid Island Mortg. Corp.*,
   555 F.3d 298 (2d Cir. 2009)........................................................................ 18

*Au New Haven, LLC v. YKK Corp.*,
   Civ. No. 15-3411 (GHW), 2023 WL 2612204 (S.D.N.Y. Mar. 23, 2023)............................ 20

*B.G. Soft LTD v. BG Soft Internat'l, Inc.*,
   Civ. No. 01-17, 2002 WL 1467744 (E.D.N.Y. Apr. 29, 2002) .............................. 15

*Bayer CropSciences AG v. Dow AgroSciences LLC*,
   851 F.3d 1302 (Fed. Cir 2017)...................................................................... 21

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   910 F.2d 1049 (2d Cir. 1990)................................................................ 13, 14, 16

*Bolivar v. Pocklington*,
   975 F.2d 28 (1st Cir. 1992) ...................................................................... 13

*Brasseler, USA LLP v. Stryker Sales*,
   267 F.3d 1370 (Fed. Cir 2001)............................................................... 21, 22

*Brown v. Generac Power Sys., Inc.*,
   Civ. No. 20-22434, WL 1030229 (S.D. Fla. Feb. 27, 2021) ..................................... 8

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)................................................................................ 17

*City of Almaty, Kazakhstan v. Ablyazov*,
   Civ. No. 115-05345 (AJN)(KHP), 2020 WL 5269554 (S.D.N.Y. Sept. 3, 2020)................... 12

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)........................................................................... 12, 13

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998)...................................................................... 23

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982).............................................................................. 14

*EMED Tech. Corp. v. Repro-Med Sys., Inc. d/b/a RMS Med. Prods.*,
   18-5880 (LGS)(RWL) (S.D.N.Y. Nov. 12, 2019)............................................. 19, 22

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   134 S. Ct. 1744 (2014)................................................................................................ 20

*Intercapital Debt Trading Ltd. v. Cantor Fitzgerald Inc.*,
   Civ. No. 94-9275 (LMM), 1996 WL 167820 (S.D.N.Y. Apr. 19, 1996) ................................ 16

*Interlink Internat'l Fin. Servs., Inc. v. Block*,
   145 F. Supp. 2d 312 (S.D.N.Y. 2001)....................................................................................... 14

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017)................................................................................................ 22

*Kev. J.R. Sushi 2 Inc.*,
   Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576 (S.D.N.Y. Feb. 7, 2022) *rep. and rec.
   adopted*, Civ. No. 19-7332 (PAE)(BCM), 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) ........ 13

*Lumen View Technology LLC v. Findthebest.com*,
   811 F.3d 479 (Fed. Cir. 2016).......................................................................................... 22, 23

*MarcTec, LLC v. Johnson & Johnson*,
   644 F.3d 907 (Fed. Cir. 2012)................................................................................................ 19

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988)................................................................................................ 22

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274, 109 S. Ct. 2463, 2470, 105 L. Ed. 2d 229 (1989)............................................. 23

*Nokia Corp. v. InterDigital, Inc.*,
   645 F.3d 555 (2d Cir. 2011)............................................................................................. 13, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014)..................................................................................................... 20, 22

*Rivera v. New York City Hous. Auth.*, Civ.
   No. 94-436, 1998 108032 (S.D.N.Y. Mar. 11, 1998) ............................................................. 20

*Schlaifer Nance & Co. v. Estate of Warhol*,
   194 F.3d 323 (2d Cir. 1999).................................................................................................... 17

*Smart Study Co. v. Bichha123*,
   505 F. Supp. 3d 322 (S.D.N.Y. 2020)............................................................... 13, 14, 15, 16

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir.1985)................................................................................................ 11

*SUFI Network Servs., Inc. v. United States,*
  785 F.3d 585 (Fed. Cir. 2015)............................................................................ 23

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*,
  967 F.3d 1339 (Fed. Cir. 2020)........................................................................... 11

*Taurus IP, LLC v. DaimlerChrysler Corp.*
  726 F.3d 1306 (Fed. Cir. 2013)........................................................................... 19

*United States v. L-3 Commc'ns EOTech, Inc.,*
  921 F.3d 11 (2d Cir. 2019)................................................................................. 12

*United States v. Negriel,*
  Civ. No. 6:22-06514 (EAW), 2022 WL 17828845 (W.D.N.Y. Dec. 21, 2022)...................... 12

*Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.,*
  Civ. No. 11-3633 (LTS)(MHD), 2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015) *aff'd sub nom.*
  *Worldwide Home Prod., Inc. v. Time, Inc.,* 626 F. App'x 1009 (Fed. Cir. 2015)...................... 23

## Statutes

28 U.S.C. § 1927 ...................................................................................... 13, 18

35 U.S.C. § 154(d)(2) ....................................................................................... 3

35 U.S.C. § 285................................................................................... passim

35 U.S.C. § 287(a) .......................................................................................... 11

35 U.S.C. § 299.............................................................................................. 12

## Rules

Fed. R. Civ. P. 58(e) ....................................................................................... 21

Fed. R. Civ. P. 65(c) .................................................................................. 13, 14

Fed.R.Civ.P. 11 ............................................................................................ 13

Fed.R.Civ.P. 5.2 ........................................................................................... 10

Fed.R.Civ.P. 65(b) .......................................................................................... 1

L.Civ.R. 5.2.................................................................................................. 10

## Treatises

11A Charles A. Wright *et al*., Federal Practice and Procedure § 2973 at 467 (2d ed. 1995) ....... 16

Former Defendant Joe #47, NinjaSafe LLC ("NinjaSafe") respectfully submits this Memorandum of Law in Support of its Motion for Bond Damages, Sanctions, and Attorney Fees.

## I.   INTRODUCTION

Plaintiff Jiangsu Huari Webbing Leather Co., Ltd. ("Plaintiff") alleged that 163 Joe defendants sell "Hanging Exercise Products" that infringe its U.S. Patent 11,468,673 (the "'673 patent").  Dkt. 1 ¶ 1.  Plaintiff admits that by 2020 it had lost its market dominance for such products and by 2021, was selling them at a loss.  Dkt 6-1 ¶ 17.  After the '673 patent issued on October 25, 2022, Plaintiff devised a smash-and-grab plan to remove its 163 closest competitors off of Amazon.com ("Amazon") and freeze their accounts to extort settlements and increase its sales given the lack of competition.

Specifically, on March 28, 2023, Plaintiff filed its Complaint asserting only infringement of its '673 patent, *see* Dkt. 1, and an Emergency Motion for Temporary Restraining Order, *see* Dkt. 6.  On March 31, 2023, without notice to any defendant, the Court heard *ex parte* argument from Plaintiff as to why an emergency restraint order should be granted under Fed.R.Civ.P. 65(b).  On April 4, 2023, relying on Plaintiff's unchallenged, sealed submissions, the Court entered an Order restraining the 163 defendants identified in Schedule A, including NinjaSafe, and non-party Amazon.com, from selling the accused products.  *See* Dkt. 12 (the "TRO").

But in doing so, Plaintiff failed to conduct a sufficient pre-suit investigation to support its infringement claims and need for emergency relief and committed numerous acts of litigation misconduct.  Then, less than a month after it represented to the Court that defendants needed to be enjoined to prevent irreparable harm to Plaintiff, and after failing – on no new evidence – to extend the TRO to May 2, 2023, Plaintiff abruptly abandoned this action and walked away before any resisting defendant, unquestionably damaged by Amazon's respect for the TRO, could appear and challenge Plaintiff's bogus claims of harm and patent infringement.  The only plausible inference

to be drawn from this is that Plaintiff never intended to test the merits of its infringement claims and was never at risk from defendants' continued sales, but misused its patent, this lawsuit and this Court to obtain an unjustified TRO and mass Amazon takedowns and account freezes to secure some undeserved settlements from those defendants desperate to unlock their Amazon accounts.

As discussed in further detail below, NinjaSafe's product, like that of most defendants, lacked elements of the patent claims and could not have plausibly infringed the '673 patent. Notably, during prosecution, Plaintiff knowingly narrowed its scope of patent protection by adding limitations that clearly do not exist in the accused products of dozens of defendants. Dkts. 26-2 at 4; 26-3 at 8; Tr. Hearing Ext. TRO ("Tr.") 14:15-24.

Not served, NinjaSafe nevertheless appeared, opposed Plaintiff, and presented clear evidence of non-infringement that Plaintiff neither challenged nor denied. NinjaSafe remained enjoined during the full term of the TRO. At the April 17 2023 hearing, Plaintiff's counsel did not rebut NinjaSafe's arguments that it did not infringe and it had not irreparably harmed Plaintiff. Tr. 58:21-59:3. Plaintiff subsequently dismissed NinjaSafe without prejudice.

It shocks the conscience that a plaintiff should be able to bring 163 parties to court on speculation but little to no basis in fact to support its naked accusations of mass willful patent infringement and prejudice to Plaintiff, wholly shut down defendants' Hanging Exercise Product businesses on Amazon, cost defendants, such as NinjaSafe, tens of thousands of dollars, if not more, each, in out of pocket lost sales, labor costs, attorney fees, and remediation expenses, and then seek to escape any adverse consequences by a handful of dismissals with prejudice (*i.e.*, extorted settlements) and dismissing the rest without prejudice, and be able to sue again.

The Court should not condone Plaintiff's conduct in bringing, litigating and terminating this action. By this Motion, for the reasons discussed, NinjaSafe foremost urges the Court sanction

Plaintiff by making the dismissal of NinjaSafe with prejudice, in view of Plaintiff's considerable litigation misconduct, and Plaintiff's clear reservation of rights to bring another, bigger action,[1] and also to award NinjaSafe its monetary damages under the bond for wrongful enjoinment, and attorney fees as permitted under the Patent Act and/or its inherent power.[2]

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff testified, unchallenged, that by the "second half of 2019," its Hanging Exercise Product was "widespreadly recognized in the US market," (Dkt. 6. at 18) and had annual profits of $3-4 million., *Id.*; Dkt. 6-1 at ¶ 14, and that competitors entered the global market in the latter half of 2020, which resulted in Plaintiff having declining sales, an operating loss in 2021, Dkt. 6-1 at ¶ 17, and "annual losses of a million by 2022." Tr. 12:22-25; *see also* Dkt. 6-1 at ¶ 17. Plaintiff never allocated the foregoing amounts to the United States market.

Plaintiff's Complaint included charts comparing the '673 patent claims to products of five Defendants. Dkt. 1 ¶ 20. For the non-charted Defendants, including NinjaSafe, Plaintiff alleged that "Defendants sell Hanging Exercise Products that are substantially similar in structure to the products analyzed in these claim charts" so "each of the Defendants…would also meet each and every element of Claim 1 of the '637 patent." Dkt. 1 ¶ 21.

There could not have been any infringement before October 25, 2022, when the '673 patent issued. *See* Tr. 13:5-22; 45:17-18; 35 U.S.C. § 271; Dkt. 1 (Exhibit A).[3] By then, Plaintiff was

---

[1] Plaintiff has already expressly threatened co-defendant Hyponix Brands, Ltd. with another lawsuit. Dkt. 30 at ¶ 11.

[2] For the Court's convenience, NinjaSafe structured its brief to parallel the brief of Defendant Hyponix, as many of the same facts, law and arguments are relied upon. *See also* Isackson Supp. Decl. at Exhibit 4 (a redline comparison of the NinjaSafe and Hyponix's memoranda of law)

[3] By making substantial changes to the claim language, *supra* at 2, Plaintiff lost the ability to recover damages for that period. 35 U.S.C. § 154(d)(2) (requiring published and patented claims to be "substantially identical").

unprofitable and any economic and competitive harm that Plaintiff suffered from 2019 (the peak of its earning power) to October 24, 2022 (when Plaintiff was losing about one million dollars a year), was the result of fair and legitimate competition, unprotected by patent rights.  Tr. 13:5-14:14.  Further, Plaintiff offers no evidence to suggest that since October 25, 2022, it has suffered or is likely to suffer any incremental loss of business or economic harm, let alone irreparable harm. *Id.* 14:21-24; 16:2-8.  NinjaSafe's Accused Product's selling price was $149.95, whereas Plaintiff's was lower, $122.98.  Tr. 18:21-25.  Plaintiff offers no evidence that NinjaSafe's higher price point caused it harm.

At the April 17, 2023 hearing, the Court found that "the submissions and presentation by Hyponix [NinjaSafe,] and others [] created serious doubt in [the] Court's mind as to whether [P]laintiff and its counsel performed adequate investigation as to whether the 163 defendants are selling products that infringe upon the Plaintiff's [']673 patent."  Tr. 55:15-19; *see also* 64:11-14 ("Given the lack of diligence that [P]laintiffs have seemingly done with respect to the defendants, here, the Court is no longer convinced that defendants are likely to destroy products records or proceeds.").  As a result of Plaintiff causing Amazon to freeze NinjaSafe's Amazon-related assets, NinjaSafe was prevented from doing business for nine days, resulting in approximately $19,375.02 in lost sales for NinjaSafe's product.  Weiner Supp. Decl. ¶ 12.  As discussed at the April 17, 2023 hearing, the harm extends beyond lost sales to lost opportunities, negative impact on NinjaSafe's inventory, increased advertising and marketing costs, disrupted business operations, and decreased sales rank with Amazon.  Tr. 43:16-22; Weiner Supp. Decl. ¶ 20.  NinjaSafe calculates its damages to restore it to its pre-TRO takedown at $19,375.02 in lost sales and an accumulated loss of over $50,237.10.  *Id.*

## III.   RELEVANT PROCEDURAL HISTORY

The TRO provided in relevant part that Defendants could not, for fourteen days, manufacture, import, export, advertise, market, *inter alia*, Hanging Exercise Products that infringe on the '673 patent. Dkt. 12 at 4. Further, the Court expressly restrained and enjoined non-party Amazon from certain "acts and omissions" provided in the TRO for fourteen days and prevented Amazon from providing services to defendants, their accounts and storefronts "insofar as they concern the sale of the Infringing Products." *Id.* at 5.

On April 13, 2023, Plaintiff sought to adjourn the April 17, 2023 Order to Show Cause Hearing and (*ex parte*) extend the TRO for another two weeks because not enough defendants had their products taken down and accounts frozen. Dkt. 13. On April 17, 2023, NinjaSafe filed its Response to Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. 27), showing, *inter alia,* that NinjaSafe did not infringe on Plaintiff's '637 patent.

At the April 17, 2023 hearing, only Plaintiff and four defendants, including NinjaSafe, appeared. The Court heard the appearing defendants' arguments that Plaintiff could not carry its burden of proof on getting or extending the TRO (or getting a preliminary injunction), and NinjaSafe's argument and evidence of non-infringement, including the exhibit submitted with NinjaSafe's response to Plaintiff's request for a TRO and the Declaration of Nir Weiner, owner of NinjaSafe, Dkt. 27-1. Just before the hearing, NinjaSafe and Plaintiff had discussed terms that would release their Amazon account assets, but not dismiss them from the case. Tr. 43:11-15, 49:22-50:1-4.

From April 14th through April 27th, Plaintiff dismissed 18 defendants without prejudice, and 8 defendants with prejudice. Dkts. 16, 32-33, 35-44, 46. On April 27, 2023, Plaintiff dismissed all remaining 137 Joe defendants without prejudice. Dkt. 45. Plaintiff dismissed NinjaSafe without prejudice on April 19, 2023. Dkt. 36. The Court "So Ordered" Plaintiff's April

19ᵗʰ Notice of Dismissal (Dkt. 36) on April 20, 2023.  Dkt. 39.

## IV.   PLAINTIFF'S RECORD OF LITIGATION MISCONDUCT

Despite the short life of this case, Plaintiff's litigation misconduct is manifest.  To support its emergency *ex parte* motion for the TRO, Plaintiff offered – under seal – two boilerplate paragraphs of naked conclusions by Plaintiff's counsel Zhang that merely restate the argument in the public brief and offer no fact in support.  *Compare* Dkt. 6 at 19-21 and Dkt. 9, ¶¶ 2, 3.  Unsealed, counsel's declaration fails to present any background, education, experience, or activity undertaken that would qualify counsel to render such opinions, or any factual basis for his conclusions.  Nor is there any evidence that any one defendant was likely to hide or dispose of assets (Dkt. 6, at 8), or of "irreparable harm to Plaintiff, including loss of [US] market share" (Dkt. 6 at 7) caused by post patent grant competition (infringing or not), warranting any *ex parte,* no notice, under seal, emergency, extraordinary relief.  Mr. Liu's declaration merely evidenced global harm suffered before Plaintiff had enforceable U.S. patent rights.  Dkt. 6-1.  Nor is there even any evidence to support sealing the record that deprived defendants of the due process opportunity to oppose.

Plaintiff's coup de grâce, the *en masse* voluntary dismissals, together with its litigation misconduct, confirms that the patent infringement claims were in bad faith, a ruse to provide cover to deceive the Court into acting to Plaintiff's great commercial advantage, and establishes that Plaintiff never had any intent to address the merits of its emergency wrought patent infringement claims.

Plaintiff's acts set out below, individually and collectively rise to litigation misconduct in this case.  Largely *ex parte* acts, they cannot be excused as mere hardball litigation tactics.

1.  <u>A fabricated case for emergency relief that was factually baseless</u>.  Plaintiff knew since 2019 that it had been losing market share and profitability to competitors (Dkt. 6-1 ¶¶ 13-20), *e.g.*,

6

after April 2021, at least Hyponix was competing (at a higher price point) without buying from Plaintiff (Dkt. 30 ¶¶ 2-7), and knew or should have known that NinjaSafe had been on sale since December 2020.  Weiner. Supp Decl. ¶ 1, 3.  Plaintiff also knew by June 2022 that its '673 patent was going to issue (Dkt. 30 ¶ 8), and, thus, had ample time to prepare a lawsuit.  If, indeed, there was such an emergency of irreparable harm, why then did Plaintiff delay yet another five months before filing this case and moving *ex parte*, under seal, and without notice, for and obtaining a fourteen-day TRO to shut down its competition?  The only plausible inference is that Plaintiff fabricated an emergency claim of irreparable harm to coordinate the takedown of its competition with the peak 2023 spring sales season for the goods in question, causing maximum competitive harm.  It is unsurprising then that when Plaintiff's attempt to extend the TRO for another two weeks — a request made at a time when no defendant had been served the Complaint and it looked like none would appear in the case, Dkt. 13 — failed, Plaintiff abandoned this case entirely (Dkt. 45).

       2   <u>Inadequate pre-suit investigation</u>.  Plaintiff's counsel Zhang's March 27, 2023 Declaration states, "I coordinated and supervised the efforts to research and identify the individual defendants.  I also coordinated and supervised the efforts to provide a jurisdictional basis for this Court to hear this case." Dkt. 9 at ¶ 4.  He describes the efforts as follows:

> 5. This effort included (1) completing a checkout page for an order of Infringing Products from every Defendant through an account associated with an address in New York City, and/ or 2) purchasing an Infringing Product for delivery to the same address; and 3) verifying that the purchased items were indeed shipped to the same address. Attached Exhibit D001 to D162 are true and accurate copies in relation to each named defendant, with each exhibit number matching the defendant number identified in Schedule "A" attached to the complaint.

Dkt. 9 at ¶ 5.  Plaintiff's manager Liu also was directly involved, as he states:

25. We consulted our attorney, and only listed Defendants whose infringing products are available for sale, ready to ship or have shipped to the State of New York, County of New York

Dkt. 6-1 at ¶ 25.  That was it.  The foregoing lacks a bona fide investigation of the NinjaSafe

product, and any comparison of it to the '673 patent claims on an element-by-element basis.

3. <u>Dismissal of all defendants.</u>  Plaintiff moved for the TRO on March 28, 2023.  *See* Dkt.

12.  Beginning April 14, 2023, Plaintiff began dismissing defendants without prejudice pursuant

to Rule 41(a)(1).  After the April 17, 2023 hearing, Plaintiff curiously began dismissing some

defendants *with* prejudice.  *See* Dkts. 37-44.  Of the eight dismissed with prejudice, the Court

found that the products of three were missing claim elements, and Plaintiff lacked evidence to

support an infringement claim as to two more.  The inference here is those five defendants took an

extortionate settlement to unlock their Amazon accounts that froze all their funds, not just those

related to accused products.  Less than a month later, on April 27, 2023, Plaintiff dismissed all

remaining defendants without prejudice.  Dkt. 45. The clear inference drawn here is that these

defendants refused to settle, yet suffered damages from Amazon's takedowns and account freezes,

and now remain exposed to Plaintiff's further infringement charges.

4. <u>Unwarranted and unavailable relief.</u>  Plaintiff's predicate for a freeze on defendants'

financial accounts was to preserve "an equitable accounting of Defendants' profits" Dkt. 6 at 19.

However, the Patent Act does not allow for an equitable recovery of **Defendants'** profits as a

remedy for Plaintiff's infringement claim because the '637 patent is a *utility* patent, and such relief

is only available for *design* patents pursuant to 35 U.S.C. § 289.  *See Brown v. Generac Power

Sys., Inc.*, Civ. No. 20-22434, WL 1030229, at *11 (S.D. Fla. Feb. 27, 2021), *rep. and rec. adopted*,

Civ. No. 20-22434, 2021 WL 1022872 (S.D. Fla. Mar. 17, 2021) (sanctioning plaintiff for its

request for defendants' profits in a utility patent case under Rule 11).  The Patent Act under § 284

limits relief to compensatory damages based on proven actual harm arising from the infringement, but no less than a reasonable royalty for infringement of utility patents. But Plaintiff did not tell the Court this; nor could any defendant. Rather, Plaintiff either slavishly recycled a prior complaint and failed to diligently verify the relief requested was legally applicable, or outright sought to mislead the Court for an improper purpose.

More litigation misconduct occurred when Plaintiff enabled and allowed Amazon to freeze all of NinjaSafe financial assets at Amazon, thus ensnaring "profits" unrelated to the sole product at issue, contrary to the Court's clear directive to limit what could be frozen. Dkt. 12 at 5 ("only insofar as they concern the sale of Infringing Products"). As a result of these misconducts, Plaintiff was wildly successful in that NinjaSafe like many other defendants woke up one day to find its entire Amazon account for all of its products sold there wrongly frozen to "preserve" an unavailable equitable remedy. Weiner Decl. (Dkt. 27-1) at ¶ 2.

5. <u>Misrepresentations to the Court</u>. Plaintiff broadly argued that NinjaSafe, among other Defendants, could not be found because they "obfuscated their physical locations on their respective Amazon storefronts. *See* Zhang Decl., ¶ 3." (Dkt. 6 at 8). Plaintiff's manager Mr. Liu similarly testified. Liu Decl. (Dkt. 6-1) ¶ 24 (described unsuccessful attempts to identify defendants' physical addresses by reviewing information on defendants' online stores). Plaintiff also argued for alternative service contending that defendants provided incomplete and/or false names and addresses in registering their online stores and "rel[ied] primarily on electronic communications with third party service providers and customers." Zhang Decl. (Dkt. 9) ¶ 2.

Moreover, as the Court recognized, even if Plaintiff didn't have a street address for NinjaSafe, a diligent pre-suit investigation would have revealed that NinjaSafe is not difficult to locate at https://ninjasafe.com and an Amazon store. *See* Tr. 63:21-23:5-7 (the Court confirming

how easy it was to find NinjaSafe and its mailing address).  *See also* Weiner Supp. Decl. ¶ 5

Rather than be forthcoming, Plaintiff and its counsel, failed in their diligence and *ex parte*, simply lumped NinjaSafe in with other defendants, labeling them all "hidden" to obtain the TRO and temporary blanket market exclusivity.  This is litigation misconduct.

6.   Circumventing this Court's authority and demonstrating wrongful enjoinment. Plaintiff's TRO restrained defendants and Amazon from "selling and/or otherwise dealing in Hanging Exercise Products that infringe the '673 patent ('Infringing Products')".  Dkt. 12 at 4, 9. Nevertheless, without leave of Court, Plaintiff committed acts of litigation misconduct.   In violation of the Court's clear direction that the TRO – still under seal – be disclosed only to Amazon, Plaintiff's counsel purposefully also disclosed the TRO to four other e-commerce platforms.  Dkt. 13 at 1 ("We served the copy of TRO with Defendants' information list to Amazon.com, eBay.com, Wayfair.com, Walmart.com and Alibaba.com").

7.   Failure to provide sealed documents.  Plaintiff committed litigation misconduct in sealing documents and failing to serve them on NinjaSafe after its Amazon account was frozen and its appearance in the case.  *See* Dkt. 27 at n.1 (noting the pleadings remain sealed).  This strategy deprived NinjaSafe of the ability to (i) comply with the TRO (which NinjaSafe only received notice of via a notice sent by Amazon (Weiner Supp. Decl. ¶ 4) and (ii) respond to Plaintiff's arguments for the TRO extension.  Plaintiff also committed litigation misconduct by filing its evidentiary documents under seal without the required motion for sealing, explaining the need for a seal, as required by Fed.R.Civ.P. 5.2, L.Civ.R. 5.2, and this Court's individual rules of practice.

The TRO provided that the sealed documents should be unsealed when "Amazon restrains Defendants' assets and accounts pertaining to the Infringing Products pursuant to Section III above

or April 18, 2023." (Dkt. 12 at 9).  Hence, because Amazon had restrained NinjaSafe's accounts

on April 10, 2023, Weiner Supp. Decl. ⁋ 8, Plaintiff had no basis not to provide NinjaSafe's counsel

with the sealed documents (which then remained unavailable from the Court (Dkt. 34)), except an

improper purpose to prevent NinjaSafe and other Defendants from being prepared to address the

TRO issues.

    9.   Misrepresentation of the balance of harm.  Plaintiff misrepresented its burden of proof

in its *ex parte* papers and omitted discussion of the balance of harm factor.  *Takeda Pharms. U.S.A.,*

*Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339 (Fed. Cir. 2020); *see* Dkt. 29 at 4.  It becomes litigation

misconduct by grossly understating and misrepresenting to the Court the potential harm of a TRO

to 163 defendants and by proposing a bond set at only $500, which defendants could not show

otherwise from having their businesses frozen and losing sales.  Dkt 6 at 22.  The Weiner

Declaration, dated April 17, 2023 (Dkt. 27-1), and Weiner Supp Decl. ¶ 20, establish the great

potential for harm caused by an improvidently issued TRO was almost forty times greater than

Plaintiff's proposed bond, and this is only for one defendant, NinjaSafe.

    10.   Additional miscellaneous acts of litigation misconduct.  Plaintiff's pleadings are

facially defective, which is evidence of bad-faith litigation.  For example, Plaintiff alleges willful

infringement, but there is no allegation of notice of infringement having been delivered, at least to

NinjaSafe.  Nor did Plaintiff allege compliance with the Patent Marking Statute, 35 U.S.C.

§ 287(a), (providing constructive notice of infringement).  *See* Dkts. 1, 8.  The Weiner Declaration

establishes that NinjaSafe had no such notice.  Weiner Supp. Decl. ⁋ 4).  A failure to plead pre-

suit knowledge of the asserted patent negates any possible claim of willful infringement or

entitlement to such sought in the prayer for relief.  *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d

1226, 1236 (Fed. Cir.1985) ("To willfully infringe a patent, the patent must exist and [the accused

infringer] must have knowledge of it.").

Further, during the April 17, 2023 hearing, Sell Below Cost USA LLC, established that Plaintiff's Complaint was defective for misjoinder, arising from its inadequate pre-suit venue investigation, by improperly suing defendants who should not be joined in the same case. *See* 35 U.S.C. § 299; Tr. 40:23-41:24.   Relatedly, the Court noted additional instances of litigation misconduct. *See e.g.*,

> the submissions and presentation by Hyponix and others created serious doubt in this Court's mind as to whether [P]laintiff and its counsel performed adequate investigation as to whether the 163 defendants are selling products that infringe upon Plaintiff's '673 patent.  Hyponix has pointed to at least four elements of claim 1 of the '673 patent that are not present in its product. . . .Secondly, in reviewing the information submitted by plaintiff with respect to the other defendants and reviewing…first the mounting members which Hyponix has helped to highlight, the following entries have mounting members that are not rectangular shaped buckles as set forth in claim 1 of the '673 patent.

Tr. 55:56:5.  The Court proceeded to list dozens of defendants that do not contain rectangular shaped buckles.  "Because of these clear discrepancies and the showing by Hyponix and Trailblaze and NinjaSafe, the Court no longer accepts the allegedly representative samples of a claim chart presented by Plaintiff…"  Tr. 58:8-14.

## V.   LEGAL STANDARDS FOR AWARDING BOND DAMAGES, SANCTIONS, FEES

Plaintiff's Rule 41(a) dismissal of NinjaSafe does not deprive this Court of its authority to consider collateral matters, such as bond damages, sanctions and fee awards.  *See United States v. Negriel*, Civ. No. 6:22-06514 (EAW), 2022 WL 17828845, at *2 (W.D.N.Y. Dec. 21, 2022) (citing *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 18 (2d Cir. 2019) (courts retain "inherent post dismissal authority to consider such collateral matters as the possibility of sanctions"); *City of Almaty, Kazakhstan v. Ablyazov*, Civ. No. 115-05345 (AJN)(KHP), 2020 WL 5269554, at *44 (S.D.N.Y. Sept. 3, 2020) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (same, for "a motion for fees and costs").  Thus, the Court may exercise its post-dismissal

authority, pursuant to the Court's inherent authority, Rule 11, 28 U.S.C. § 1927, and/or 35 U.S.C. § 285, to grant NinjaSafe an award of damages against Plaintiff's bond, sanction Plaintiff by converting NinjaSafe's dismissal to a dismissal with prejudice, and determine this patent case is exceptional and award NinjaSafe its attorney fees. *See also Kev. J.R. Sushi 2 Inc.*, Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576, at *14 (S.D.N.Y. Feb. 7, 2022), *rep. and rec. adopted*, Civ. No. 19-7332 (PAE)(BCM), 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) (citing *Bolivar v. Pocklington*, 975 F.2d 28, 31 (1st Cir. 1992) (holding "even after the voluntary dismissal of plaintiff's claims by notice and without prejudice, the district court possessed the requested jurisdiction to impose sanctions under Rule 11 and section 1927"); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 412 (1990).

### A.      Wrongfully Enjoined, NinjaSafe is Entitled to Bond Damages

"Courts sitting in equity have long required movants to post bonds before they would issue *ex parte* TROs.  The bond shifts from defendants to plaintiffs some of the risk that a TRO granted after only one side has been heard might be wrongfully granted." *Smart Study Co. v. Bichha123*, 505 F. Supp. 3d 322, 324 (S.D.N.Y. 2020) (citing *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 555, 557 (2d Cir. 2011)).  "[A] party subjected to a [TRO] in district court who is later found to have been 'wrongfully enjoined' may recover against the security bond damages suffered as a result of the injunction." *Id.*) (citing *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051 (2d Cir. 1990)).  Here, Plaintiff wrongfully enjoined NinjaSafe, who is entitled to recover damages against Plaintiff's security bond.

Importantly here, to the extent Plaintiff's bond is inadequate to compensate NinjaSafe, NinjaSafe reiterates its request to increase the security.  *See* Dkt. 27 at 7-8; Fed. R. Civ. P. 65(c). Rule 65(c) requires successful plaintiffs to post security for damages incurred by the enjoined party in the event a defendant was wrongfully enjoined).  At the time of NinjaSafe's *ex parte* TRO

application, the Court did not benefit from factual and legal submissions by all the parties.  As such, NinjaSafe contends increasing the bond is appropriate here, within the Court's collateral jurisdiction, where the parties and the Court become aware of actual damages in excess of Plaintiff's bond.  This is consistent with Rule 65(c)'s remedial purpose "to protect [an] adversary from loss [if] future proceedings prove that the injunction issued wrongfully."  *Edgar v. MITE Corp.*, 457 U.S. 624, 629 (1982)(Stevens, J., concurring in part and concurring in the judgment); *see also Nokia Corp.*, 645 F.3d at 559 (holding that a wrongfully enjoined party is entitled to a presumption in favor of recovery against a bond pursuant to Rule 65(c)); *see also Interlink Internat'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001). ("The purpose of requiring security prior to issuance of an injunction or a temporary restraining order is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained").

1. **NinjaSafe Was Wrongfully Enjoined Because Plaintiff Abrogated the TRO and Dismissed NinjaSafe Before Substantive Litigation Commenced.**

The inquiry of whether a party was wrongfully enjoined is generally "in hindsight, in light of the ultimate decision on the merits after a full hearing." *Blumenthal*, 910 F.2d at 1054.  As such, courts look beyond the limited record available at the TRO phase of litigation.  *See id.* Similar to *Smart Study*, here, Plaintiff waivered on its claims once NinjaSafe challenged Plaintiff's request to extend the TRO, and demonstrated non-infringement, and dismissed NinjaSafe shortly thereafter, depriving the Court of an opportunity to conduct a "full hearing" or issue a "decision of the merits as contemplated by the Second Circuit in *Blumenthal*" or the benefits of discovery and cross examination.  *See* Tr. 43:11-15, 49:21-50:4. Dkt. 36 (Plaintiff's Notice of Voluntary Dismissal of NinjaSafe and twelve other defendants two days after the April 17th hearing).  As such, "when the issuance of a TRO is followed by the plaintiff's prompt voluntary withdrawal of

14

the Complaint as to a given defendant …, that withdrawal establishes as a matter of law that the defendant was wrongfully enjoined." *Smart Study*, 505 F. Supp. 3d 322, 325–26.

The Court's record from the April 17th hearing clearly indicates enjoinment was wrongful, given the Court's assessment of Plaintiff's lack of diligence in examining whether it had plausible patent infringement claims and finding that Plaintiff's *ex parte* record in light of new information was no longer sufficient to support any injunctive relief. *See* Tr. 55:15-56:5; 58:8-14. 62:16-65:10.

Also apposite here is *B.G. Soft LTD,* where the Court explained that:

> Although there has been no determination, after a full hearing on the merits, that the defendants had at all times the right to distribute and sell the product at issue, they were deprived of that opportunity by the plaintiff's abandonment of the action. The plaintiff should not be able to escape liability under the bond by its own default.

*B.G. Soft LTD v. BG Soft Internat'l, Inc.*, Civ. No. 01-17, 2002 WL 1467744 (E.D.N.Y. Apr. 29, 2002). This Court should similarly conclude that NinjaSafe was wrongfully enjoined because Plaintiff dismissed NinjaSafe before substantive litigation commenced, and because Plaintiff failed to diligently determine whether it had a plausible infringement claim against NinjaSafe when named a "Joe" defendant.

That less than a month after Plaintiff sought an *ex parte* TRO, it has now dismissed all defendants, demonstrating a lack of intention of ever litigating this action on the merits, but, instead, operating a smash-and-grab litigation scheme leveraging Amazon takedowns to extract underserved settlements, also supports NinjaSafe, who did not settle, being wrongfully enjoined. Accordingly, wrongly enjoined, NinjaSafe is entitled to recover damages under the bond.

### 2. NinjaSafe's Damages Were Proximately Caused by Plaintiff's TRO That Prevented NinjaSafe Sales for Nine Days.

Wrongfully enjoined, NinjaSafe "is entitled to a presumption in favor of recovery." *Smart Study*, 505 F. Supp. 3d 322, 326 (citing *Nokia*, 645 F.3d at 559). It may recover damages "shown to have been proximately caused by the injunction . . . up to the amount of the bond." *Blumenthal*,

910 F.2d at 1056.   "'[W]hile the fact of damages must be established definitely, the amount need not be proven mathematically.'"   *Intercapital Debt Trading Ltd. v. Cantor Fitzgerald Inc.*, Civ. No. 94-9275 (LMM), 1996 WL 167820, at *2 (S.D.N.Y. Apr. 19, 1996) (quoting 11A Charles A. Wright *et al*., Federal Practice and Procedure § 2973 at 467 (2d ed. 1995)).   To assess damages claims, courts prefer evidence of "invoices, attorney's time entries, revenue spreadsheets and the like."   *Smart Study*, 505 F. Supp. 3d at 327 (accepting defendant's presentation of lost sales "based on a simple review of [its] sales on wish.com and [its] sales of 'Baby Shark' products on the other platforms for the similar period last year and in the months leading up to the injunction." (quoting Third Weitzel Decl.)).   Also, damages may include labor costs at an hourly rate multiplied by the number of hours spent on the wrongful enjoinment.   *Smart Study*, 505 F. Supp. 3d at 328.

Here, NinjaSafe seeks lost sales damages of $19,375.02 and labor costs of $4000.00 as damages recoverable under Plaintiff's $20,000 bond (Dkt. 12 at 9), which as noted should be adjusted upward as needed.   NinjaSafe determined its daily average revenue from April 1-10 to be $1,036.40 and daily average profit to be $399.78.   *See* Weiner Supp. Decl. Ex. B (revenue spreadsheet) and Ex. C (TRO Lost Sales).   After Amazon reinstated NinjaSafe's listing, NinjaSafe measured daily average sales and daily average profit from the period of April 20 to April 27, 2023.   *Id.* ¶¶ 15-16.   Post reinstatement NinjaSafe's daily average sales reduced to $1,036.40 and its average daily profit reduced to $399.78.   *Id.* ¶ 15, Ex. C (TRO Lost Sales).   This reduction is a reduction of 52% ($1,116.38) in daily sales and a reduction of 66% ($782.61) in daily profit.   *Id.* ¶ 16.

NinjaSafe has determined that it will take at least 90 days to reach its previous ranking on Amazon.   *Id.* ¶ 18.   Taking into consideration NinjaSafe's reduction in sales and profits coupled with our loss of ranking, it will incur an accumulated loss of over $50,237.10 (90 days times

$1,116.38 times 0.5) in sales and over $35,217.45 (90 days times $782.61 times 0.5) in profits.  *Id.*

¶ 19.  Thus, NinjaSafe calculates its damages to restore it to its pre-TRO takedown at $19,375.02

in lost sales and an accumulated loss of over $50,237.10.  *Id.*

Mr. Weiner spent twenty hours addressing issues regarding the TRO, supplier

management, contacting Plaintiff for settlement, rescheduling inventory management and

delivery, creating and executing a plan to revive NinjaSafe's ranking on Amazon after the TRO

expired.  *See* Weiner Supp. Decl. ¶ 19.  His hourly rate is $200.00.  *Compare Smart Study*, 505 F.

Supp. 3d at 328 (awarding a conservative pay rate of $15/hour for 140 hours).  Thus, the total labor

costs associated with the TRO are $4,000.  Mr. Weiner calculated his hours rate by taking the

amount he was paid for a three-month period where he works twenty hours for NinjaSafe, $4,320,

and divided that amount by twenty hours, which he conservatively adjusted to $200/hour.

### B. Plaintiff's Litigation Misconduct Makes it Appropriate to Award Sanctions in the Form of Dismissal With Prejudice of NinjaSafe and to Award Attorney's Fees.

The Court has the inherent power to impose sanctions for bad-faith conduct. *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323,

336 (2d Cir. 1999) (finding proper use of inherent authority where "(1) challenged claim was

without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper

purposes such as harassment or delay.").  "[A] claim is colorable when it has some legal and factual

support," and it "lacks a colorable basis when it is utterly devoid of a legal or factual basis."  *Id.*

The Court's inherent power "'reaches both conduct before the court and that beyond the court's

confines' such that courts may achieve 'submission to their lawful mandates.'"  *Id.* (quoting

*Chambers*, 501 U.S. at 43–44).

Sanctions are appropriate here because of the lack of any colorable basis of infringement by NinjaSafe, extensive litigation misconduct by Plaintiff, bad faith litigation by dismissing defendants to avoid addressing infringement, and to remedy the harm caused by the wrongful enjoining and Amazon takedown and the fees NinjaSafe incurred in defending against a baseless claim brought for an improper purpose.  Separately, in the event a dismissal with prejudice is entered for NinjaSafe, it will become a "prevailing party" qualified to recover attorney fees for an exceptional case pursuant to 35 U.S.C. § 285.

### 1. Plaintiff's Litigation Misconduct Warrants Sanctions in the Form of Dismissal With Prejudice.

The Second Circuit has consistently recognized a party may seek dismissal with prejudice as a sanction for litigation misconduct.  *See e.g., Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (willful noncompliance with discovery orders permitted dismissal with prejudice of action).  The same principles apply here *mutatis mutandis*.

This Court has collateral jurisdiction to, and should, find and order a dismissal of NinjaSafe with prejudice as an appropriate sanction for Plaintiff's lack of a colorable claim and extensive litigation misconduct applicable to NinjaSafe, as described in detail *infra*, pursuant to Rule 11, 28 U.S.C. § 1927 and/or the Court's inherent authority.  This sanction is of primary importance to NinjaSafe.  Without a dismissal with prejudice, NinjaSafe lies in perpetual uncertainty of whether Plaintiff will sue again, as it has already threatened Hyponix it will do.  Dkt. 30 at ¶ 11.

This looming threat, and opportunity for Plaintiff to institute another *ex parte* takedown on Amazon or other e-commerce platforms, cast dark shadows on and affect NinjaSafe's advertising, marketing, strategic planning, and budgeting, *inter alia*.  Nor should NinjaSafe bear the expense of defending another frivolous litigation brought by a Plaintiff who commenced this action knowing of its competition for years, and it intentionally narrowed the scope of its patent protection

18

in a way that it cannot cover NinjaSafe product.

As this Court has recognized in the context of patent litigation, proceeding with litigation with "no intention of testing the merits of [its] claims" is in "bad faith with the motivation to extract settlements and disable [defendant] as a competitor." *EMED Tech. Corp. v. Repro-Med Sys., Inc. d/b/a RMS Med. Prods.*, 18-5880 (LGS)(RWL), Dkt. 154 (S.D.N.Y. Nov. 12, 2019) (addressing exceptionality under 35 U.S.C. § 285). Likewise, here, Plaintiff's bad faith can be inferred from [Plaintiff's] pursuit of objectively baseless litigation, disabling NinjaSafe as a competitor on Amazon, and other litigation misconduct. *Id.* (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328-29 (Fed. Cir. 2013) (same; noting that findings supported implicitly conclusion that plaintiff subjectively knew that the suit "lacked a reasonable basis and was, therefore, pursued and maintained in bad faith") and *MarcTec, LLC v. Johnson & Johnson,* 644 F.3d 907, 919 (Fed. Cir. 2012) (same; noting that findings that plaintiff pressed litigation despite inconsistent prosecution history, mischaracterizing claim construction rulings, and relied on unreliable expert testimony, each "support[] the conclusion that [plaintiff] subjectively knew that it had no basis for asserting infringement and therefore pursued this litigation in bad faith.").

Actions have consequences. Plaintiff brought a frivolous, implausible infringement claim, maneuvered the Court to exclude NinjaSafe from legitimate, non-infringing competition during its peak sales period without notice, compelled Amazon (and other e-commerce platforms) to obey the TRO and take down NinjaSafe's legitimately competitive products to NinjaSafe's harm, and then sought to extend the TRO for another two weeks. Yet, once NinjaSafe appeared and challenged Plaintiff on the merits and procedure, it immediately backpedaled, dismissed NinjaSafe two days later, demonstrating no intent to address the merits of infringement, while at the same time leaving NinjaSafe exposed to a do-over (or more). This defines bad faith litigation.

Dismissal of NinjaSafe with prejudice is "narrowly tailored to remedy[] the specific prejudice" that NinjaSafe "would otherwise suffer." *Au New Haven, LLC v. YKK Corp.*, Civ. No. 15-3411 (GHW), 2023 WL 2612204, at *15 (S.D.N.Y. Mar. 23, 2023) (citing *Rivera v. New York City Hous. Auth.*, Civ. No. 94-436, 1998 108032, at *1 (S.D.N.Y. Mar. 11, 1998).  Given the litigation misconduct by Plaintiff and NinjaSafe's counsel's persuasive explanation as to how NinjaSafe's product could not possibly be an infringing product (Dkt. 27), NinjaSafe urges the Court to determine that the dismissal with prejudice is a narrowly tailored remedy as it only involves the '673 patent and NinjaSafe's product.  The Court should grant sanctions of dismissal with prejudice to prevent the type of bad faith litigation, misconduct and gamesmanship so clearly engaged in by Plaintiff from proceeding any further.

### 2.   Plaintiff's Litigation Conduct Makes the Case Exceptional and an Award of Attorney Fees Appropriate.

NinjaSafe seeks $33,952.50 in legal fees.  *See also* Decl. R. Isackson ¶¶ 14-18.  The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).  Such circumstances include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Octane Fitness*, 13 S. Ct. at n.6 and 1756 (emphasis added).

Indeed, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id.*  "A failure to perform

a diligent pre-suit investigation or ignoring what was found when conducting a pre-suit investigation supports a finding of exceptional case, particularly where the information was easy to obtain." *Bayer CropSciences AG v. Dow AgroSciences LLC,* 851 F.3d 1302, 1307 (Fed. Cir 2017); *Brasseler, USA LLP v. Stryker Sales*, 267 F.3d 1370, 1386 (Fed. Cir 2001).

If the Court awards NinjaSafe the sanction of a dismissal with prejudice, that would change the parties' legal relationship and make NinjaSafe a prevailing party.  Under the Court's collateral jurisdiction, Fed. R. Civ. P. 58(e) and 35 U.S.C, § 285, the Court may consider the record and hear whether and determine that this case should be deemed exceptional for the reasons set forth herein, and, if so, in its discretion, award NinjaSafe its attorney fees.

This case is exceptional because Plaintiff's infringement claim is baseless and reflects Plaintiff's deliberate bad-faith attempts to thwart its competition and was the result of clearly inadequate pre-suit investigations as to infringement, venue, and service.  *See, e.g.,* Dkt. 27. Ex. A (explanation of as to how the NinjaSafe's product cannot plausibly infringe on the '637 patent). As the Court heard at the April 17th hearing, a product takedown has immediate and lasting financial consequences.  Tr. 43:10-45:25, 46:7-12, 46:19-47:9, 47:22-7, 50:10-51:5; Dkt. 28 ¶ 9. Wiener Supp. Decl. ¶ 20.  The Court may consider the evidentiary record, including that presented at the April 17th hearing, and Plaintiff's failure to rebut NinjaSafe's proofs.  Coupled with dismissing NinjaSafe shortly after the April 17th hearing and the rapid dismissal of *all* defendants from this action (Dkt. 45), the record demonstrates an objectively baseless infringement claim never intended to be litigated from the onset of this case.  The instances of bad faith and litigation misconduct described *ad nosium*, *supra* also support a finding of exceptionality such that the Court should award NinjaSafe its attorney fees.  Further, the Court should award fees as a deterrent mechanism to avoid "'wasteful litigation' on [the basis of] similarly weak arguments." *Inventor*

*Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377 (Fed. Cir. 2017).

The Court should award attorney fees from the day NinjaSafe received Amazon's takedown notice through this Motion because Plaintiff's positions were unsupportable from the outset, it litigated in bad faith, was motivated by removing its competitors from the marketplace, and its conduct before the Court amounts to litigation misconduct. *See, e.g., Brasseler, U.S.A. I, LP v. Stryker Sales Corp, et al.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001) ("[Defendant] would not have incurred any of the fees generated in defense of this suit had [Plaintiff] . . . not filed a claim for infringement of that patent, known by [Defendant] to have been improperly obtained."); *see also Lumen View Technology LLC v. Findthebest.com*, 811 F.3d 479, 482 (Fed. Cir. 2016) (holding that § 285 "imposes 'one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: [t]he power is reserved for 'exceptional' cases.") (citing *Octane Fitness*, 134 S.Ct. at 1755-56). Further, "but for" causation of NinjaSafe legal spend warrants awarding fees for the entire case. The amount of fees to be awarded is committed to the sound discretion of the Court. *EMED Tech. Corp. v. Repro-Med Sys., Inc. d/b/a RMS Med. Prods.*, 18-5880 (LGS)(RWL), Dkt. 154 (S.D.N.Y. Nov. 12, 2019) (citing *Lumen View Technologies LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016)).

As set forth in the Isackson Declaration and Gillis Declaration, NinjaSafe seeks $33,952.50 in legal fees. The fees that NinjaSafe requests are reasonable under 35 U.S.C. § 285 and the Court's inherent authority because they are narrowly tailored to only "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Mathis v. Spears*, 857 F.2d 749, 757 (Fed. Cir. 1988). These sums properly include the time spent by attorneys, paralegals, and other support staff in preparing NinjaSafe's defense to meritless claims set forth in Plaintiff's Complaint. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109

S. Ct. 2463, 2470, 105 L. Ed. 2d 229 (1989).

NinjaSafe's fee calculations are based on the widely accepted "lodestar" method, which "multiply[] a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen View Tech. LLC*, 811 F. 3d at 594.  Moreover, the rates upon which NinjaSafe relies are reasonable as "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *SUFI Network Servs., Inc. v. United States*, 785 F.3d 585, 594 (Fed. Cir. 2015).  *See Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*, Civ. No. 11-3633 (LTS)(MHD), 2015 WL 1573325, at *3 (S.D.N.Y. Apr. 9, 2015), *aff'd sub nom. Worldwide Home Prod., Inc. v. Time, Inc.*, 626 F. App'x 1009 (Fed. Cir. 2015) (using AIPLA survey to find award request less than average was objectively reasonable); *see also* Isackson Decl., Ex. 2 (AIPLA 2021 Survey excerpt).

For these reasons, NinjaSafe asks the Court to find the case exceptional and to award attorney fees, which is squarely within the Court's discretion.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted).  If the Court declines to sanction Plaintiff by making NinjaSafe's dismissal one with prejudice, and finds § 285 is not applicable because NinjaSafe is not a prevailing party, then the Court should exercise its inherent authority and § 1927 to sanction Plaintiff and its counsel by awarding NinjaSafe its attorney fees.  If NinjaSafe must remain exposed to a second infringement action by Plaintiff, then NinjaSafe should not have to also pay to defend Plaintiff's false start here.

## VI.    CONCLUSION

For the reasons set forth above, NinjaSafe respectfully requests that this Court grant NinjaSafe Motion for Bond Damages, Sanctions, and Attorney Fees.

Dated: May 2, 2023

_____
Robert M. Isackson (RI 4303)
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY 10601
T.914.821.9077
F.914.288.0023
isackson@leasonellis.com
lelitdocketing@leasonellis.com

*Attorneys for Defendant NinjaSafe LLC*