IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIANGSU HUARI WEBBING LEATHER CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>JOES IDENTIFIED IN SCHEDULE A,<br><br>Defendant. | Case No. 1:23-cv-02605-JLR |

**SUPPLEMENTAL DECLARATION OF NIR WEINER**

I, Nir Weiner, hereby state and declare as follows:

1.  I have been a member and owner of NinjaSafe LLC ("NinjaSafe") since 2020, and NinjaSafe has been operating as a Delaware Limited Liability Company since December 2021. My current position is Owner and Chief Executive Officer ("CEO") of NinjaSafe. I have personal knowledge of the facts set forth in this Declaration.

2.  NinjaSafe primarily sells its products through Amazon.com, and also at its own website at https://ninjasafe.co.

3.  NinjaSafe has been in existence since 2020 and has a 4.6 rating on Amazon.

4.  I only heard about this lawsuit and the corresponding court order which froze sales of my NinjaSafe obstacle courses for kids (specifically Amazon product ASIN number B08GV5R3QF) when Amazon sent me a notice on April 11, 2023, which included the case number for this proceeding (23-cv-02605). NinjaSafe began selling this product in the United States in December 2020. Dkt. 27-1 ¶ 4. I never received any notice or communications from Plaintiff.

5.  NinjaSafe can easily be reached through our e-mail address at contact@ninjasafe.co, which is prominently listed on the "Contact Us" page of our website, which anyone can find with a simple Google search for "NinjaSafe." Since December 2021, NinjaSafe

can be located by searching for our business name on the Delaware State Division of Corporations website at https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx, which shows our address as follows:



6. As Owner and CEO at NinjaSafe, I have extensive experience designing these products and evaluating corresponding patents.

7. Looking at Plaintiff's cited US Patent No. 11,478,673 in light of our relevant product, I don't believe anyone could conclude that there is infringement as claimed by Plaintiff.

8. The TRO took down our Amazon listing from April 10-19, 2023 ("Takedown Period"). Our Amazon listing was restored on April 20, and our Amazon account, concerning all our Amazon products, was unfrozen then too.

9. After the Takedown Period, our sales and profits were significantly affected.

10. Based on the previous year's sales, we were expecting to increase, or at least maintain flat sales, during the Takedown Period. *See* Exhibit A (April 2022 Sales).

11. In the fourteen-day period before the Takedown Period (March 28 to April 10, 2023), we had daily average sales of $2,152.78 and a daily average profit of $1,182.39.

12. During the Takedown Period, we did not sell any of the Accused Product and we lost a total of $19,375.02 in sales and $10,641.51 in profit. *See* Exhibit B (TRO Lost Sales).

13. Since the listing was reinstated, from the period of April 20 to April 27, 2023, our daily average sales were reduced to $1,036.40 and our average daily profits were reduced to $399.78. *See* Exhibit B.

14. This reduction is a reduction of 52% ($1,116.38) in daily sales and a reduction of 66% ($782.61) in daily profit.

15. The sales reduction is due to significant harm to our ranking in the Amazon algorithm due to the TRO that resulted in our Amazon listing being removed.

16. Based on my three years of experience listing and selling products through e-commerce websites, including Amazon, I expect it would take at least 90 days to reach our previous ranking.

17. Taking into consideration our reduction in sales and profits coupled with our loss of ranking, we will incur an accumulated loss of over $50,237.10 (90 days times $1,116.38 times 0.5) in sales and over $35,217.45 (90 days times $782.61 times 0.5) in profits. I used the factor of

3

0.5 to adjust the total because I anticipate a relative linear growth in sales over the 90-day period to return to the sales level we were operating at prior to the delisting as a result of the TRO.

18. We have also incurred $7,235.00 in legal fees from Rosenbaum & Segall P.C., which I have already paid.

19. I calculated the labor costs associated with the TRO to be $4,000. I spent 20 hours complying with the TRO, which included addressing issues with the lawsuit and understanding the scope of the TRO, which I never saw, supplier management, contacting Plaintiff for settlement, rescheduling inventory management and delivery, creating and executing a plan to revive the ranking after the TRO expired. My hourly rate is $200.00.[1] As such, the total labor costs associated with the TRO are $1,000.00.

20. Based on my three years of experience selling consumer products on Amazon, the nonmonetary damages of this takedown and long-term implications are much more significant, as listed in part below:

  a. Lost opportunities: While your product is unavailable on Amazon, potential customers may turn to competitors' offerings, leading to lost sales and missed opportunities for building a loyal customer base.

  b. Impact on brand image: The takedown may create a negative perception of your brand among customers who might associate the removal with poor quality or other undesirable factors, damaging your brand's reputation and value.

  c. Increased advertising and marketing costs: In order to try and rebuild your product's visibility and sales momentum, you may need to invest more in advertising and marketing efforts once the product is reinstated on Amazon.

---

[1] I do not have a fixed hourly rate, but I arrived at this value because I was paid $4,320 in the last three months for 20 hours of work.

    d. Strained supplier relationships: The halt in disbursements may lead to delayed payments to suppliers, potentially straining your business relationships and affecting your company's creditworthiness.

    e. Unable to place future purchase orders due to the halt on disbursements from Amazon.

    f. Decreased sales rank, which hurts future performance on Amazon.

21. NinjaSafe's current commercial product, which Amazon took down due to this court's injunction (ASIN number B08GV5R3QF, hereinafter the "Accused Product"), is essentially the same as the one shown in our product listing, available on Amazon's website at: [Amazon.com: Ninja Obstacle Course for Kids Backyard - 10 Durable Obstacles and 50' Slackline - Outdoor Playset Equipment for Girls & Boys with Climbing Net & Ladder, Wheel, Warrior Gymnastics & Monkey Bars : Toys & Games]

22. As of April 10, 2023 (the first day of the takedown period), the selling price of the NinjaSafe product taken down by Amazon per this Court's order was $149.95. *See* Exhibit C (NinjaSafe's product price). I understand that Plaintiff's comparable commercial product sells for $122.98.

23. I learned on April 20, 2023 that our Amazon account was unfrozen and the relevant goods with Amazon ASIN number B08GV5R3QF were reinstated. Neither were available on April 19, 2023.

24. I have agreed to share legal expenses and costs with defendant Hyponix Brand, Ltd. in connection with recovering damages under the bond, sanctions against Plaintiff, and recovering my attorney fees for this case. I retained Leason Ellis for this purpose, and have already paid Leason Ellis a $10,000 retainer against future invoices in this matter.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 1, 2023 at Givatayim, Israel.

                                                        Nir Weiner