**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Jiangsu Huari Webbing | ) | |
| Leather Co., Ltd. | ) | |
| | ) | |
| Plaintiff | ) | Case No. 23-cv-2605-JLR |
| | ) | |
| v. | ) | |
| | ) | |
| Joes Identified in | ) | |
| Schedule "A" | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDOM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT,**
**HYPONIX'S MOTION FOR ATTORNEY FEES, BOND DAMAGES AND SANCTION**
**[DKT 49-53]**


Respectfully submitted

J. Zhang and Associates, P.C.
By: Jiyuan Zhang, Esq
13620 38th Avenue, Ste 11G,
Flushing, NY 11354

# Contents

I.   INTRODUCTION ........................................................................................................... 7

II.   FACTS ......................................................................................................................... 7

   A.   BACKGROUND OF ONE-SWEEP-ALL CASES ........................................... 7

   B.   U S. Patent 11,468,673 (the "'673 Patent") ....................................................... 8

   C.   This Case History ................................................................................................. 9

   D.   Facts applied to Hyponix ................................................................................... 10

III.   LEGAL ANALYSIS .................................................................................................. 12

   1.   Rule 41(a) Dismissal without Prejudice is Valid and the Court Lacks Authority to Vacate Plaintiff's Rule 41(a) Dismissal or Convert it to a Dismissal with Prejudice ......................................... 12

   2.   The Defendant's Claim for Relief Under 35 U.S.C. § 285 Must be denied entirely ...................... 16

   3.   Defendant's Request for Rule 11 Sanctions Against Plaintiff must be denied entirely: Absence of Legal Basis, Analysis, and Procedural Compliance ................................................ 17

   4.   Defendant's request relief for 28 U.S.C. § 1927 shall be denied entirely ....................................... 19

   5.   The Court should not exercise its power to impose sanction against Plaintiff and its counsel because this case is filed with colorable basis and not in bad faith ................................................ 22

      a.   Colorability ................................................................................................. 22

      b.   Bad faith ..................................................................................................... 24

   6.   Damage against the security damage ................................................................. 26

      a.   This Court has no authority to increase the security bond ............................. 26

      b.   This Defendant is not entitled to claim bond damage due to Estoppel and Waiver .............. 27

      c.   Hyponix is not being wrongfully enjoined ................................................... 28

      d.   Court shall limit Defendant's claimed bond damage within the scope of bond posted ........ 30

IV.   CONCLUSION ......................................................................................................... 32

# Cases

. *Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003) .......................................................... 12

*AccuScan, Inc. v. Xerox Corp.*, No. 96 Civ. 2579, 1998 U.S. Dist. LEXIS 14242, 1998 WL
    603217 (S.D.N.Y. Sept. 11, 1998) ........................................................................................ 22

*Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)........................................ 14

*Au New Haven, LLC v. YKK Corp.*, Civ. No. 15-3411 (GHW), 2023 WL 2612204, at *15
    (S.D.N.Y. Mar. 23, 2023)...................................................................................................... 14

*Bliven v. Hunt*, 579 F.3d 204, 212 (2d Cir. 2009)....................................................................... 30

*Blumenthal,* 910 F.2d at 1054 .............................................................................................. 28, 29

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598,
    605, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) .................................................................... 15

*Chambers*, 501 U.S. ................................................................................................................... 21

*Cuccio v. Cartisano* (In re Cartisano), Nos. 8-18-70703-reg, 8-18-08060-reg, 8-18-08061-reg,
    2019 Bankr. LEXIS 641 (Bankr. E.D.N.Y. Mar. 4, 2019)....................................................... 19

*Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) ................................. 13

*Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001) ................. 13

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 254 (2d Cir. 1985).................................... 19

*Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.*, 436 F.2d 1345, 1352 (10th Cir. 1971).............. 30

*Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) .......................................... 17

*Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029-30 (8th Cir. 2003) .............................. 18

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327-29 (2d Cir. 1995).................................... 17

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) .................................................. 27

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L.
    Ed. 2d 42 (1984).................................................................................................................... 26

*Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1034 (Fed. Cir. 2006) ................................ 15

*In re Auction Houses Antitrust Litig.*, 00 Civ. 0648 (LAK) (RLE), 2004 U.S. Dist. LEXIS 23351 (S.D.N.Y. Nov. 17, 2004) ............................................................................................. 19

*In re Dubrowsky*, 206 B.R. 30 (Bankr. E.D.N.Y. 1997) ................................................................. 19

*Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1319 (Fed. Cir. 2004) ................................... 15

*Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) ................................... 15

*Intercapital Debt Trading Ltd v. Cantor Fitzgerald Inc.*, No. 94 Civ. 9275 (LMM), 1996 WL 167820, at *2 (S.D.N.Y. April 10, 1996) ................................................................. 29

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552 (S.D.N.Y. 2006)* ......................................................................................................................................... 29

*John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) ..... 14

*Ke v. J.R. Sushi 2 Inc.*, Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576, at *14 (S.D.N.Y. Feb. 7, 2022) ............................................................................................................... 13

*Keller v. Mobil Corp.*, 55 F.3d 94 (2d Cir. 1995) .......................................................................... 20

*Koch v. Hankins*, 928 F.2d 1471 (9th Cir.1991) ........................................................................... 30

*L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998) ......................................... 17

*Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ...................................................................... 30

*Medafrica Line, S.P.A. v. American West African Freight Conference*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987) .................................................................................................................. 29

*Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 144, n.8 (7th Cir. 1978) ............................. 12

*Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) ........................... 21, 23

*Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) ................................................................... 13

*Mone v. Commissioner*, 774 F.2d 570 (2d Cir. 1985) ................................................................... 19

*Mooney v. City of N.Y.*, 219 F.3d 123, 131 (2d Cir. 2000) ........................................................... 27

*Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir. 1980) ...................................................................... 21

*Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011) ............................................ 30

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 993 (Fed. Cir. 2020) ....... 13

*Pedrina v. Han Kuk Chun*, 987 F.2d 608, 610 (9th Cir. 1993)..................................................... 12

*People of the State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir.) ................ 23

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4 (2d Cir. 2002) ............................................ 17

*Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) ......................................... 18

*Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) ............................................. 15

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011)................................. 26

*RFR Indus. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007) ............................. 15, 16

*Rivera v. New York City Hous. Auth.*, No. 94 Civ. 436, 1998 U.S. Dist. LEXIS 2816, 1998 WL
    108032, at *1 (S.D.N.Y. Mar. 11, 1998)................................................................................. 14

*Roth v. Green*, 466 F.3d 1179, 1191-93 (10th Cir. 2006)............................................................ 18

*Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 104 F.2d 105, 107 (2d Cir. 1939)
    .............................................................................................................................................. 30

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) .......................... 17

*SCM Corp. v. Xerox Corp.*, 645 F.2d 1195 (2d Cir. 1981)........................................................... 22

See *In re Emanuel*, 422 B.R. 453 (Bankr. S.D.N.Y. 2010) ......................................................... 20

*Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383 (2d Cir. 1985)...................... 21

*Smart Study*, 505 F. Supp. 3d............................................................................................................. 28

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003) ........................................... 17

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996).... 22

*Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979) ................................................................ 12

*Thorp v. Scarne*, 599 F.2d 1169, 1177, n.10 (2d Cir. 1979) ....................................................... 12

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S.Ct. 1199,
    167 L.Ed.2d 178 (2007) ......................................................................................................... 30

*Tullock v. Mulvane*, 184 U.S. 497, 509-14, 22 S.Ct. 372, 46 L.Ed. 657 (1902).......................... 30

*Veneziano v. Long Island Pipe Fabrication & Supply Corp*, 238 F.Supp. 2d 683 (D.N.J. 2002) 19

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)..................................... 14

*Youssef v. Tishman Constr. Corp.*, 744 F.3d 821, 824–26 (2d Cir. 2014).................................... 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135, 23 L. Ed. 2d 129, 89 S. Ct.
     1562 (1969) ............................................................................................................................. 21

**Statutes**

28 U.S.C. § 1927.............................................................................................................. 11, 18, 19

28 U.S.C.S. § 1927................................................................................................................... 19

35 U.S.C. § 285............................................................................................................... 11, 15, 16

Fed. R. Civ. P. 11(c)(2) .............................................................................................................. 16

Fed. R. Civ. P. 37 ....................................................................................................................... 13

Fed. R. Civ. P. 41 ....................................................................................................................... 11

Fed. R. Civ. P. 65(c) ................................................................................................................... 25

Rule 11 ................................................................................................................................. 11, 16

Rule 37 ........................................................................................................................................ 13

Rule 54(d) ................................................................................................................................... 15

# I.   INTRODUCTION

Plaintiff, Jiangsu Huari Webbing Leather Co., Ltd ("Plaintiff"), by and through its undersigned counsel, with Declaration of Steven R. Fairchild and Declaration of Jiyuan Zhang and annexed exhibits, filed this Memorandum in support of Opposition to Defendant, Hyponix (Docketed as D063 in the Schedule A annexed to Complaint) Motion for Attorney Fees, Bond Damages and Sanction (the "Motion") [Dkt 49-53]

# II.   FACTS

## A. <u>BACKGROUND OF ONE-SWEEP-ALL CASES</u>

In the rapidly evolving landscape of intellectual property infringement cases have become a notable source of contention, particularly with the growing number of defendants involved in these cases. The given scenario presents a 'one-sweep-all' case that involves a plaintiff filing an intellectual property infringement lawsuit against a massive number of defendants. This is not an isolated incident but is becoming increasingly prevalent in today's tech-centric world. See **Exhibit A** and **Exhibit B** annexed to Jiyuan Zhang's Declaration ("Zhang's Decl."), the similar cases search results.

The first course of action involves filing a complaint against the numerous defendants under partial or entire seal, along with an *ex parte* motion for a temporary restraining order (TRO). The request for a seal is submitted to maintain confidentiality and to avoid any potential manipulation or destruction of evidence by the defendants. Moreover, the *ex parte* relief is deemed necessary as it would prevent immediate and irreparable harm if the defendants were to prematurely learn about these proceedings. There is a legitimate concern that this knowledge could lead to the destruction of critical documentary evidence or the transfer of assets to foreign

7

jurisdictions, thereby undermining the efficacy of the law and impeding the Court's ability to grant appropriate relief.

To ensure efficient and effective communication, the Court is asked to allow the service of pleadings via alternative means. This usually involves email or, in some cases, making the documents available for download through a third-party website. This alternative service helps bypass conventional methods that might be slower or less reliable, particularly when dealing with multiple defendants. This strategy also ensures that all parties involved have timely access to important information, facilitating a fair and efficient legal process.

Once the TRO, or sometimes a preliminary injunction (PI), is granted, the next step is to serve the defendants with the pleadings in accordance with the alternative service granted by the relevant courts. The objective of a TRO or PI is to maintain the *status quo* pending further order of the court. By serving the defendants with the pleadings after securing the TRO or PI, the plaintiff prevents any potential tampering with evidence or assets while ensuring that the defendants are informed of the legal proceedings against them.

In conclusion, these 'one-sweep-all' cases present unique challenges due to the sheer number of defendants involved. However, with a strategic approach involving sealed complaints, *ex parte* motions for TROs, and the use of alternative service methods, it is possible to navigate these complexities and uphold the principles of fairness and justice.

### B.  U S. Patent 11,468,673 (the "'673 Patent")

Plaintiff is the owner of The '673 patent, entitled "Walking Flat Belt Having Hanging Exercise Means", which was filed on March 21, 2020, and *issued on October 25, 2022* and named Zhaogen Liu as the inventor. See **Exhibit C** annexed to Zhang's Decl., the '673 patent

registration. The '673 patent claims priority to Chinese Application No. CN 2019203699, filed on March 22, 2020.

## C.  <u>This Case History</u>

Due to the overwhelming number of infringers, which inherently complicates the investigation and preparation for litigation, coupled with the constraints of the holiday season, the Plaintiff had to adapt their approach. Initially, there were 203 defendants, but a more thorough investigation revealed that some were not suitable for inclusion due to issues related to jurisdiction, non-infringement of the product, or unverifiable addresses.

As such, following the pattern previously described, the Plaintiff initiated a partially sealed litigation against a staggering 163 defendants, including Hyponix. This was for the alleged infringement of the Plaintiff's U.S. Patent 11,468,673 (the "'673 Patent"). The suit was filed on March 28, 2023.

Meanwhile, Plaintiff move for Temporary Restraining Order ("TRO") [Dkt 6] and serve the Defendants via by e-mail and/or electronic publication [Dkt 5].

On March 31, 2023, this Court granted Plaintiff's Motion for Temporary Restraining Order and denied Motion for Service. In such TRO order [Dkt 12], it increases the surety bond to $20,000 Dollar (USD).

On April 17, 2023, this Court held a conference as to Plaintiff's motion for TRO extension, which was later denied. Therefore, there is no restraining order valid after April 18, 2023.

Starting from April 14, 2023, Plaintiff started to dismiss some defendants in this action with or without prejudice per F.R.C.P. 41(a)(1)(A)(i). And on May 1, 2023, Plaintiff voluntarily dismissed the remaining defendants. Therefore, this case was closed on May 1, 2023. [Dkt 47]

Throughout the entire proceeding, no defendant answered Plaintiff's complaint, this case has not reached the stage of discovery, nor moved a summary judgment motion.

### D.  Facts applied to Hyponix

Defendant Hyponix is included in this case docketed as No. D063 that named as "Hyponix". Based on its Amazon frontstore information, this is a Delaware corporation named ***Hyponix Brands Ltd***. with its principal place at 3 Germay Dr, Unit 4 #2456, Wilmington, DE, 19804 US. See **Exhibit D** annexed to Zhang's Decl., a true and correct copy of Hyponix's Amazon frontstore. However, a search conducted on the Delaware Department of State's Division of Corporations website (https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx) reveals that there is **no** company registered under the name Hyponix Brands Ltd in Delaware. Instead, a similar but distinct company is registered under the entity name of ***Hyponix Brands, LLC***, with a registration date of September 24, 2021. See **Exhibit E** annexed to Zhang's Decl., a true and correct copy of Hyponix from the state of Delaware. Furthermore, an online search reveals the existence of a business named Hyponix Sporting Goods. However, no address information or official business identity details are displayed or readily available. See **Exhibit F** annexed to Zhang's Decl., a true and correct copy of Hyponix Sporting Goods webpage.

The inconsistency between the information provided by the Defendant regarding its corporate identity and the official records from the Delaware Department of State raises

significant doubts about the accuracy and legitimacy of the Defendant's identity. This glaring disparity provides a reasonable basis for the Plaintiff to suspect that the Defendant may be operating as a shell company or misrepresenting its true corporate identity.

On April 13, 2023, Defendant, through its counsel, Sevag Demirjian, Esq, emailed the undersigned an Attorney Letter ("Letter") [Dkt 15-2], which clearly states:

> If your client [Plaintiff] is willing to cooperate with reinstating Hyponix's ability to sell its products on Amazon and through any other channel **by the close of business (5:00 PST) Friday April 14, 2023**, Hyponix will assume the takedown and court action was a mistake. Otherwise, we will take such action as deemed necessary to protect Hyponix's rights, claims, and defenses, including evaluating whether the '673 patent is valid, whether there was a grossly defective and insufficient pre-suit investigation as to Hyponix, and whether the proceedings to date have been wrongful, exceptional and sanctionable within the meaning of 35 U.S.C. § 285 and 28 U.S.C. § 1927 and the Court's discretion.

Also, this such letter, Hyponix's legal full name is ***Hyponix Brands Ltd***., and headquartered in headquartered in Vancouver, British Columbia, Canada. See **Exhibit G** annexed to Zhang's Decl., a true and correct copy of the Hyponix Brands Ltd registered in Canada.

The undersigned acknowledges the receipt of this letter and has communicated with the Plaintiff regarding the matter at hand. During these discussions, it was brought to our attention that Gevin Rai, the owner of Hyponix, reached out to the Plaintiff requesting the withdrawal of the complaint lodged against Hyponix. This communication led the Plaintiff to discover that Hyponix is, in fact, is a former customer, who used to conduct its business under "Monkey Line". Given the prior disputes, the Defendant counsel's promise and other relevant considerations, it was decided to withdraw Hyponix from this case. See Liu's Declaration at 11 [Dkt 30]

On April 14, 2023, around 12 PM EDT, we, acting as the Plaintiff, exercised our right for voluntary dismissal as per Rule 41(a)(1)(A)(i) before receiving a response to our complaint from the Defendant. Immediately following this, we urged Amazon to reactivate Hyponix's account. Contrary to their previously stated position in their correspondence, Hyponix and its legal counsel continue to invest energy into contesting a case that has been conclusively closed in their favor. In an unexpected move, Hyponix sought an oral argument opposing our request for an extension on the Temporary Restraining Order (TRO) against them, despite the fact that the TRO had already become non-applicable to them due to its expiration.

## III.   LEGAL ANALYSIS

Defendant moves this Court to exercise its post-dismissal authority, pursuant to the Court's inherent authority, to grant Hyponix an award of damages against Plaintiff's bond, sanction Plaintiff by Rule 11, 28 U.S.C. § 1927, and/or 35 U.S.C. § 285; however, the Defendant's requests are unfounded and should be rejected for the reasons outlined below.

1. **Rule 41(a) Dismissal without Prejudice is Valid and the Court Lacks Authority to Vacate Plaintiff's Rule 41(a) Dismissal or Convert it to a Dismissal with Prejudice**

The legal foundation for the Defendant's attempt to shift the dismissal from without prejudice to with prejudice lacks merit. This is due to the fact that they either failed to cite any applicable legal references, or they incorrectly applied the legal provisions pertinent to this matter.

First and foremost, it's unequivocal that Plaintiff filed notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on April 14, 2023. Rule 41(a)(1)(A)(i) states that "the

plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal ***before the opposing party serves either an answer or a motion for summary judgment***." This rule is intended to "establish[] a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally  to dismiss an action." *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979). Given that no answer or motion for summary judgment has been filed, our dismissal without prejudice is both valid and effective. Consequently, there are no grounds for it to be vacated.

The notice of voluntary dismissal is effective ***regardless of the plaintiff's motive in filing the dismissal***. See *Thorp v. Scarne*, 599 F.2d 1169, 1177, n.10 (2d Cir. 1979) ("[P]laintiffs tend to dismiss actions that do not look promising while defendants generally want to obtain an adjudication on the merits in precisely the same cases. As long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge."); *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 144, n.8 (7th Cir. 1978) ("Courts have allowed dismissals even where there is evidence that plaintiffs are attempting to avoid litigation in a particular forum or otherwise engage in forum shopping."). Therefore, even though the Defendant has cited various actions of the Plaintiff and the Plaintiff's attorney, these cannot be considered valid reasons to invalidate the Plaintiff's withdrawal of the complaint.

The ***district court has no power to change dismissal without prejudice into dismissal with prejudice***. See *Youssef v. Tishman Constr. Corp.*, 744 F.3d 821, 824–26 (2d Cir. 2014); *Pedrina v. Han Kuk Chun*, 987 F.2d 608, 610 (9th Cir. 1993).

The court ***loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them***. *Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003); *Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042, 1049 (9th Cir.

2001); *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (no jurisdiction to enter final judgment); *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 993 (Fed. Cir. 2020) (***dismissal order entered after notice of voluntary dismissal had no legal effect).*** Therefore, regardless of the unfounded speculations listed by the Defendant in their motion, they cannot undermine the Plaintiff's legitimate rights.

The sole legal basis on which the Defendant is relying to request the court to modify the judgment is entirely erroneous. The Defendant has mistakenly applied Rule 37 to this case, which is a complete misinterpretation.  Fed. R. Civ. P. 37 states that "[A]ll litigants, including *pro ses*, have an obligation to comply with court orders," *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990), and failure to comply may result in sanctions, including dismissal with prejudice. Rule 37 of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . ., the court where the action is pending may issue further just orders . . . [including] dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

The Defendant alleges that "*thus, the Court may exercise its post-dismissal authority, pursuant to the Court's inherent authority, Rule 11, 28 U.S.C. § 1927, and/or 35 U.S.C. § 285, to grant Hyponix an award of damages against Plaintiff's bond, sanction Plaintiff **by converting Hyponix's dismissal to a dismissal with prejudice**, and **determine this patent case is exceptional** and award Hyponix its attorney fees*." Defendant supported its allegation by citing *Ke v. J.R. Sushi 2 Inc.*, Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576, at *14 (S.D.N.Y. Feb. 7, 2022). However, this reference is not relevant here as the cited case had reached a stage where discovery was complete and moving defendants had filed for summary judgment. In contrast, our case was voluntarily dismissed without prejudice in accordance with Rule 41(a). In

the case cited by the Defendant, moving defendants had been served summons and pleadings, they had responded to the complaint, and discovery was completed, which is not the situation in our current case.

Defendant also alleges its legal basis "*the Second Circuit has consistently recognized a party may seek dismissal with prejudice as a sanction for litigation misconduct*. See e.g., *Agiwal v. Mid Island Mortg. Corp*., 555 F.3d 298, 302 (2d Cir. 2009)" However, this reference is not applicable in the present context as it pertains to another instance of Rule 37, which is not relevant to our case.

The Defendant further contends that:

> Dismissal of Hyponix with prejudice is "narrowly tailored to remedy[] the specific prejudice" that Hyponix "would otherwise suffer." *Au New Haven, LLC v. YKK Corp*., Civ. No. 15-3411 (GHW), 2023 WL 2612204, at *15 (S.D.N.Y. Mar. 23, 2023).

However, the Defendant's portrayal of the original case is misleading. The original case is also citing Rule 37, which read as follows:

> The guiding principle underlying the imposition of sanctions is that "any sanction must be narrowly tailored to remedy[] the specific prejudice that the party [*49] **seeking discovery would otherwise suffer**." *Rivera v. New York City Hous. Auth*., No. 94 Civ. 436, 1998 U.S. Dist. LEXIS 2816, 1998 WL 108032, at *1 (S.D.N.Y. Mar. 11, 1998). The sanction of dismissal is available "only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

Consequently, the Defendant lacks a legal basis to request this Court to vacate the Plaintiff's Rule 41(a) dismissal without prejudice and/or convert a Rule 41(a) dismissal without prejudice to with prejudice.

## 2. __The Defendant's Claim for Relief Under 35 U.S.C. § 285 Must be denied entirely__

"Under 35 U.S.C. § 285 and Rule 54(d), Fed. R. Civ. P., attorney fees and costs can be awarded to a prevailing party." *Inland Steel Co. v. LTV Steel Co*., 364 F.3d 1318, 1319 (Fed. Cir. 2004). To be the prevailing party in a patent case, "'one must receive at least some relief on the merits, which alters . . . the legal relationship of the parties.'" *Raniere v. Microsoft Corp*., 887 F.3d 1298, 1304 (Fed. Cir. 2018) (quoting *Inland Steel Co*., 364 F.3d at 1320). Relief on the merits requires at least "that the party obtain a court order materially changing the legal relationship of the parties." *Id.*

While the Defendant correctly identified 35 U.S.C. § 285 as the legal basis under the Patent Act, which allows a court to award reasonable attorney fees to the prevailing party in exceptional cases, they overlooked the requisite of becoming a prevailing party. As previously stated, a prevailing party is one that gains 'some relief on the merits' that changes 'the legal relationship of the parties'. (*Inland Steel Co. v. LTV Steel Co*., 364 F.3d 1318, 1320 (Fed. Cir. 2004)).

"*[A] plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)[A](i) does not bestow 'prevailing party' status upon the defendant*." *RFR Indus. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007). In order for a defendant to be said to have "prevailed" as the result of a Rule 41 dismissal, the dismissal must have "sufficient judicial imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties.'" *Highway Equip. Co. v. FECO, Ltd*., 469 F.3d 1027, 1034 (Fed. Cir. 2006) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 605, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)). A voluntary dismissal without prejudice is neither a change in

16

the legal relationship of the parties nor judicially sanctioned such that the opposing party can be deemed a "prevailing party" under § 285. *RFR Indus.*, 477 F.3d at 1353.

Therefore, the Defendant's request for relief under 35 U.S.C. § 285 should be categorically denied. There is no prevailing party in this case, and this Court does not have the authority to issue an order determining any party as a prevailing party.

**3.** **Defendant's Request for Rule 11 Sanctions Against Plaintiff must be denied entirely: Absence of Legal Basis, Analysis, and Procedural Compliance**

The Defendant consistently urges the court to sanction the Plaintiff and their attorney under Rule 11. Yet, throughout the entirety of their motion, the Defendant has failed to present any legal foundation for such Rule 11 sanctions, nor have they taken the time to analyze it. Evidently, the Defendant and their counsel demonstrate a lack of familiarity with the Rule 11 procedure.

Rule 11 provides, in pertinent part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected ***within 21 days after service or within another time the court sets***.

See Fed. R. Civ. P. 11(c)(2).

The advisory committee note explains:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the ***"safe harbor" period begins to run only upon service of the motion***. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id*. advisory committee's notes to 1993 Amendments (emphasis added).

Rule 11 and principles of due process require that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). "Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable." *Id*. (citation omitted); accord *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). In contrast, the Defendant's motion is replete with incessant and unsubstantiated demands, yet lacks even the most basic procedural elements. For instance, throughout the motion, not a single provision of Rule 11 or any relevant case is cited, let alone the required source of authority and specific conduct or omission.

In addition, the Defendant's motion failed to demonstrate its compliance with the "Safe-harbor" requirement.

The ***safe-harbor provision is a strict procedural requirement***. *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4 (2d Cir. 2002); see also *Hadges v. Yonkers Racing Corp*., 48 F.3d 1320, 1327-29 (2d Cir. 1995). ***An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period***. *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998) (request for sanctions in letter without separate service of motion did not comply with Rule 11's requirement that sanctions motion be made separately); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock -- the rule says nothing about the use of letters."); accord *Roth v. Green*, 466

F.3d 1179, 1191-93 (10th Cir. 2006); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029-30 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).

A deeper analysis reveals that the Defendant has not adhered to the requisite procedural standards. Rule 11's "safe-harbor" provision mandates that prior to filing a sanctions motion, the moving party must serve the proposed motion on the opposing party at least 21 days before filing with the court. This 21-day window is intended to provide an opportunity for the party potentially facing sanctions to amend or withdraw the offending pleading, thereby averting sanctions.

In the current case, the Defendant has not provided evidence demonstrating compliance with this mandatory 21-day notice period as stipulated by the "safe-harbor" provision prior to filing their sanctions motion. In fact, they completely disregarded this requirement. This misstep constitutes a clear procedural lapse, which alone provides sufficient grounds for the court to dismiss the Defendant's request for sanctions.

The Defendant's procedural oversight is not a trivial matter. The safe-harbor provision is not just a mere formality, but a fundamental element of Rule 11, designed to prevent the misuse of the sanctions mechanism. By failing to provide the necessary notice, the Defendant has bypassed an important safeguard and compromised the integrity of the process. As such, it is fitting for the court to dismiss the Defendant's sanctions motion due to its procedural inadequacy.

### 4. <u>Defendant's request relief for 28 U.S.C. § 1927 shall be denied entirely</u>

28 U.S.C. Section 1927 authorizes sanctions where "an attorney *so multiplies proceedings and engages in vexatious conduct* in bad faith." *In re Auction Houses Antitrust Litig.*, 00 Civ. 0648 (LAK) (RLE), 2004 U.S. Dist. LEXIS 23351, at *18 (S.D.N.Y. Nov. 17,

2004); 28 U.S.C. § 1927. A federal District Court has the authority, when an attorney's conduct crosses the line from "misunderstanding, bad judgment, or well-intentioned zeal," to frivolousness and harassment, to excess costs, including attorneys' fees, against that attorney. *Veneziano v. Long Island Pipe Fabrication & Supply Corp*, 238 F.Supp. 2d 683, 694 (D.N.J. 2002); 28 U.S.C. § 1927.

A court may impose sanctions against an attorney pursuant to 28 U.S.C.S. § 1927 for bad faith conduct that is not necessarily "entirely without merit" or tied to a specific Code provision, but which ***unnecessarily delays the proceeding***. 28 U.S.C.S. § 1927. The purpose of sanctioning an attorney for bad faith conduct under § 1927 is to ***deter unnecessary delays in litigation***. *Cuccio v. Cartisano* (In re Cartisano), Nos. 8-18-70703-reg, 8-18-08060-reg, 8-18-08061-reg, 2019 Bankr. LEXIS 641, at *1 (Bankr. E.D.N.Y. Mar. 4, 2019)

In applying the facts of this case to the legal requirements for imposing sanctions, this Court must construe § 1927 "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." See *Mone v. Commissioner*, 774 F.2d 570, 574 (2d Cir. 1985) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 254, 254 (2d Cir. 1985)). Under 28 U.S.C. § 1927, the movant must show by clear and convincing evidence a "clear showing of bad faith...[as a] prerequisite to the imposition of sanctions". See *In re Dubrowsky*, 206 B.R. 30, 36 (Bankr. E.D.N.Y. 1997). Judge Bernstein has provided several examples of sanctionable conduct under 28 U.S.C. § 1927, including: "resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting

until the eve of trial before making a jury demand." See *In re Emanuel*, 422 B.R. 453, 465

(Bankr. S.D.N.Y. 2010) (citing *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995)).

The Defendant's motion lacks any analysis or explanation of the nature of the 28 U.S.C. §

1927 sanctions. They have not provided even the most basic elucidation of what this particular

sanction entails.

Notably, the Defendant's motion omits any reference to delays, misunderstandings, poor

judgments, or overly zealous actions that could be attributed to the Plaintiff or their counsel.

Furthermore, it does not address any alleged frivolousness, harassment, or excessive costs,

including attorney's fees, that might be laid at the feet of the Plaintiff's counsel.

On the contrary, throughout the entire case, it appears that only the Defendant's counsel

has exhibited an excessive zeal in pursuing litigation that has already been closed. Despite their

alleged years of litigation experience, the Defendant's counsel has invested significant time and

effort in preparing a motion that lacks a solid legal basis. Their motion does not demonstrate any

intention to mitigate damages and instead seeks to hold the Plaintiff responsible for the excessive

attorney fees incurred by the Defendant's counsel.

In summary, the Defendant's motion is deficient in providing any meaningful analysis or

explanation of the 28 U.S.C. § 1927 sanctions. Despite the Defendant's counsel's claimed

experience, it is evident that their motion lacks a legal basis and fails to address any potential

delays caused by the Plaintiff. Instead, it appears that the Defendant's counsel has pursued the

litigation of a closed case with excessive enthusiasm. Their failure to mitigate damages and their

request for the Plaintiff to bear their excessive attorney fees raises further concerns about their

understanding of the legal principles at play.

**5.** __The Court should not exercise its power to impose sanction against Plaintiff__
__and its counsel because this case is filed with colorable basis and not in bad__
__faith__

Defendant moves this court for sanction based on the district court's inherent power. A
district court's inherent power to sanction derives from the fact that courts are "vested, by their
very creation, with power to impose silence, respect, and decorum, in their presence, and
submission to their lawful mandates." *Chambers*, 501 U.S. at 43 (internal quotation marks
omitted); accord *DLC Management Corp*., 163 F.3d at 136. In order to impose sanctions
pursuant to its inherent power, a district court must find that: (1) the challenged claim was
without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper
purposes such as harassment or delay. See *Milltex Indus. Corp. v. Jacquard Lace Co*., 55 F.3d
34, 38 (2d Cir. 1995)

**a.  Colorability**

"[A] claim is entirely without color when it lacks any legal or factual basis." *Sierra Club
v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (internal quotation
marks omitted) (emphasis added), cert. denied, 475 U.S. 1084 (1986). Conversely, a claim is
colorable "when it has some legal and factual support, considered in light of the reasonable
beliefs of the individual making the claim." *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.
1980) (per curiam).

The holder of a patent legally maintains a monopoly over his or her product and may
"prevent other[s] from utilizing his discovery without his consent." *Zenith Radio Corp. v.
Hazeltine Research, Inc*., 395 U.S. 100, 135, 23 L. Ed. 2d 129, 89 S. Ct. 1562 (1969). A patent
holder also "may assign to another his patent, in whole or in part, and may license others to
practice his invention." *Id*. "Simply stated, a patent holder is permitted to maintain his patent

monopoly through conduct permissible under the patent laws." *SCM Corp. v. Xerox Corp*., 645 F.2d 1195, 1204 (2d Cir. 1981).

"A patent can be infringed in two ways — literally or under the doctrine of equivalents. Literal infringement requires that each feature of the patent claim is found in the accused device. Infringement under the doctrine of equivalents can be found only if the accused device contains elements identical or equivalent to each claimed  [**24] element of the patented invention." *AccuScan, Inc. v. Xerox Corp*., No. 96 Civ. 2579, 1998 U.S. Dist. LEXIS 14242, 1998 WL 603217, at *3 (S.D.N.Y. Sept. 11, 1998) (citing *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996)), rev'd in part on other grounds, 76 F. App'x 290 (Fed. Cir. 2003).

First and foremost, it is crucial to acknowledge that this case has been initiated based on the existence of a valid patent registration. The Plaintiff holds the legal right to maintain a monopoly over their product and prevent others from utilizing their discovery without consent, as recognized in Zenith Radio Corp. Furthermore, the patent holder has the authority to assign or license others to practice the invention, in accordance with SCM Corp.

Regarding patent infringement, it can occur in two ways—literally or under the doctrine of equivalents. In the present case, the Defendant's products, despite potential modifications or changes to certain components, still bear resemblance to the Plaintiff's patented invention. It can be argued that the Defendant's products infringe upon the Plaintiff's patent under the doctrine of equivalents. Although not identical, the accused products demonstrate sufficient similarities and equivalence to the claimed elements of the patented invention.

Based on these factors, it becomes evident that the Plaintiff has a colorable claim of patent infringement. The Defendant's products, despite potential alterations, still mimic the

essence of the Plaintiff's patented concept, thereby falling within the scope of infringement under the doctrine of equivalents.

### b. Bad faith

Bad faith can be inferred when the actions taken are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *People of the State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir.) (addressing sanctions under § 1927) (internal quotation marks omitted), cert. denied, 519 U.S. 825 (1996). "The court's factual findings of bad faith must be characterized by a high degree of specificity." *Milltex*, 55 F.3d at 38.

*First*, the Plaintiff initiated this case based on a valid patent and a thorough analysis of the relevant facts. The assertion that the Plaintiff engaged in false litigation or pursued an improper purpose is unfounded. The protection and defense of one's patent rights are legitimate reasons for initiating legal proceedings.

*Second*, even if the doctrine of equivalents was not explicitly mentioned in the complaint, the Plaintiff has the option to supplement their claims through an amended complaint. Therefore, the Plaintiff's actions in upholding their patent are not indicative of false litigation or any improper motives claimed by the Defendant.

*Third*, the Plaintiff's litigation procedures, including the involvement of multiple defendants, are not novel or unwarranted. They have followed established legal precedents, including sealed partial or entirely filing, which are common practices as discussed above. Thus, the Plaintiff cannot be accused of abusing the litigation process.

*Fourth*, it is worth noting that the Defendant itself did not publicly disclose their true identity in the front store of Amazon. Additionally, the Defendant's official website lacks

accurate information about their company, and there is no address information provided. These factors lead the Plaintiff to reasonably believe that the Defendant may be operating as a shell company.

Given the lack of transparency regarding the Defendant's identity and company details, it is understandable that the Plaintiff has concerns about the legitimacy and credibility of the Defendant. The Plaintiff's reservations and suspicion regarding the Defendant's true nature are justified based on the available information. This further reinforces the Plaintiff's legitimate grounds for pursuing legal action to protect their intellectual property rights.

Furthermore, as testified in Mr. Liu's Declaration docketed No. 30, as the date of April 17, 2023, the Defendant's Amazon front store was still displaying the infringing product images on its homepage. The Defendant should also be held responsible for their negligence in this matter.

Therefore, it is crucial to emphasize that the Plaintiff has valid reasons to question the authenticity and credibility of the Defendant, given their failure to disclose accurate identity and company information. This aspect adds weight to the Plaintiff's claims and supports their assertion that the Defendant's conduct should be subject to legal scrutiny.

*Fifth*, the Defendant's claims of non-service of documents by the Plaintiff are baseless. Firstly, the complaint was not sealed, only certain information related to other defendants was sealed, not the information pertaining to Hyponix. Secondly, the Defendant's attorney did not make efforts to request the documents from the Plaintiff's attorney. Lastly, the court's Temporary Restraining Order (TRO) order negated the electronic service method that the Plaintiff attempted.

***Sixth***, it is crucial to address the Defendant's erroneous attempt to portray the Plaintiff's exercise of their rights as an admission of wrongdoing. The Defendant is mischaracterizing the Plaintiff's lawful actions and attempting to create a false narrative by insinuating that the Plaintiff's exercise of their rights is an implicit acknowledgment of wrongdoing.

It is essential to emphasize that individuals have the right to exercise their freedoms and rights without it being interpreted as an admission of guilt or error. The Fifth Amendment protects individuals against self-incrimination and ensures that they are not compelled to admit to any wrongdoing. Therefore, the Defendant's attempts to misconstrue the Plaintiff's lawful actions as an admission of fault are baseless and unfounded.

The Plaintiff's exercise of their rights, such as dismissing certain defendants from the action, is a legitimate and lawful decision made in the pursuit of their interests and within the boundaries of the legal system. It is crucial to recognize and respect the Plaintiff's right to exercise their legal rights without any implications of guilt or wrongdoing.

In light of these points, it is evident that the Plaintiff's actions were legitimate, lawful, and not indicative of any bad faith or improper motives. The claims made by the Defendant to undermine the Plaintiff's case lack substance and fail to withstand scrutiny. Therefore, it is crucial to assert that the Plaintiff's initiation of this case was in good faith.

## 6.  Damage against the security damage

### a.  This Court has no authority to increase the security bond

Defendant's request to increase the security and its reliance on Fed. R. Civ. P. 65(c) for legal basis is flawed. Rule 65(c) clearly states that the security for costs and damages should be

given by the applicant at the time of issuing a restraining order or preliminary injunction. The rule does not grant the Court the authority to increase the bond after an injunction order has been vacated or denied.

Defendant has not provided any authority or legal basis to support their request for an increase in the bond at this stage of the proceedings. The plain language of Rule 65(c) restricts the requirement for security to the time of issuing the order, and it does not empower the Court to modify or increase the bond after the order has been lifted or denied.

In light of this, Defendant's request to increase the security should be rejected as it lacks a valid legal basis under Rule 65(c). The Court does not possess the authority to impose such an increase after the injunction order has been vacated or denied.

### b.  This Defendant is not entitled to claim bond damage due to Estoppel and Waiver.

Equitable estoppel precludes a person from regaining property or its value where that person "makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it" and "the other in reliance upon the misrepresentation . . . so change[s] his position that it would be unjust to deprive him of that which he thus acquired." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). "[A] hallmark of the doctrine is its flexible application . . . " *Id.* "An essential element of equitable estoppel," however, "is detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (internal quotation marks, citations and alteration omitted).

In this case, Plaintiff's detrimental reliance is clearly established by the Defendant's attorney's initial representation that they would assume the takedown and court action was a mistake, combined with the Plaintiff's prompt dismissal and notification to Amazon. The Plaintiff reasonably relied on the Defendant's representation and took action accordingly, which resulted in the dismissal of the case.

Waiver is the "intentional relinquishment of a known right." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Although we have recognized that waiver "may be inferred from the conduct of the parties," we have emphasized that "[t]he conduct said to [**17] constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Mooney v. City of N.Y.*, 219 F.3d 123, 131 (2d Cir. 2000) (internal quotation marks omitted). "We will infer a waiver only where the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *Id.* (internal quotation marks omitted).

Based on these legal principles and the actions taken by the parties, it can be argued that the Defendant shall be estopped from seeking to regain any property or value that was affected by the case, and that a waiver of certain rights may have occurred. The Plaintiff's actions were made in reliance on the Defendant's representation, and it would be unjust to allow the Defendant to now assert a different position.

Therefore, in light of these factors and legal principles, the Defendant's attempt to reverse the consequences of the case should be scrutinized, taking into consideration the doctrines of equitable estoppel and waiver.

### c.  Hyponix is not being wrongfully enjoined

Defendant correctly cites the principle that the determination of whether a party was wrongfully enjoined typically occurs in hindsight, considering the ultimate decision on the merits

after a full hearing. However, it is important to note that this Court did not have the opportunity to conduct such a full hearing or render a decision on the merits, as contemplated by the Second Circuit in *Blumenthal,* 910 F.2d at 1054. Moreover, the benefits of discovery and cross-examination, which are essential for a thorough examination of the facts and evidence, were not fully realized in this case.

In comparing this case to *Smart Study*, 505 F. Supp. 3d, it is important to note that the reasons for the dismissal without prejudice were not explicitly stated in the Smart Study case. In this case, the Plaintiff indeed intends to initiate separate litigation, as indicated in the Plaintiff's preparation to bring another lawsuit. Additionally, this decision is based on the written commitment provided by the Plaintiff's attorney. Therefore, we cannot draw a direct parallel between the two cases based on the reasons for dismissal.

Defendant further alleges itself was wrongfully enjoined because Plaintiff abrogated the TRO as to Hyponix and instructed Amazon to reinstate Hyponix's product and unfreeze its account (again, in violation of the extant TRO) and dismissed Hyponix before substantive litigation commenced, and because Plaintiff failed to diligently determine whether it had a plausible infringement claim against Hyponix when named as a "Joe" defendant.

*First*, as previously mentioned, the reason for the Plaintiff's dismissal was complex as stated above. The decision to instruct Amazon to reinstate Hyponix's product and unfreeze its account does not constitute a violation of the extant TRO.

*Second*, as previously stated, patent infringement encompasses both literal infringement and infringement under the doctrine of equivalents. The Defendant is possible to remain in violation of the Plaintiff's intellectual property rights, even if the Defendant has merely replaced certain components of the product. The nature of the infringement does not change simply due to

the use of different parts; the core issue remains that the Defendant's product mirrors the innovative elements of the Plaintiff's patented design.

**Third**, the Defendant's use of promotional images on its storefront, which are identical or very similar to the Plaintiff's, may still constitutes infringement under the theory of doctrine of equivalents.

### d. Court shall limit Defendant's claimed bond damage within the scope of bond posted

If this Court finds Hyponix is wrongfully enjoined, this Court shall reconsider the damage and award requested by the Defendant. In *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, as Court has explained previously, this [Rule 65(c)] is intended to afford security only for those damages, if any, that might be "proximately caused by the [wrongful] issuance of [an] injunction." In fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative. See 441 F. Supp. 2d 552, 565-66 (S.D.N.Y. 2006)

A wrongfully enjoined party may recover against the surety bond only those damages that were proximately caused by the issuance of the injunction. See, e.g., *Blumenthal*, 910 F.2d at 1056; *Intercapital Debt Trading Ltd v. Cantor Fitzgerald Inc*., No. 94 Civ. 9275 (LMM), 1996 WL 167820, at *2 (S.D.N.Y. April 10, 1996). Thus, the damages award is limited to those damages "arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction." *Medafrica Line, S.P.A. v. American West African Freight Conference*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987). Although damages need not be proved with mathematical certainty, ***they cannot be speculative***. See *Intercapital Debt Trading Ltd*., 1996 WL 167820, at *2.

Consistent with the "American Rule" that a prevailing party is generally not entitled to collect attorneys' fees from the losing party (see *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 448, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); *Bliven v. Hunt*, 579 F.3d 204, 212 (2d Cir. 2009)), "it has long been established that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011) (citing *Tullock v. Mulvane*, 184 U.S. 497, 509-14, 22 S.Ct. 372, 46 L.Ed. 657 (1902); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 104 F.2d 105, 107 (2d Cir. 1939); *Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ("***Attorney's fees are not recoverable as damages in an action on an injunction bond***."), abrogated on other grounds by *Koch v. Hankins*, 928 F.2d 1471 (9th Cir.1991); *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co*., 436 F.2d 1345, 1352 (10th Cir. 1971) ("***Under [Rule 65(c)] attorneys' fees...are not recoverable***.")). Therefore, Defendant's request for an award of attorney fee shall be denied because of baseless.

The Defendant, via an affidavit provided by Gevin Rai, asserts a loss of revenue and labor. However, this affidavit lacks critical detail, which undermines its validity.

*First*, the TRO only restricted the flow of funds in the Defendant's account and the sale of one product under ASIN B08XWH4YLV. However, the **Exhibit H** annexed to Zhang's Decl. reveals that the Defendant was selling the same product under multiple listings. Therefore, even if the sale of the product under this specific ASIN was restricted, the Defendant could continue to sell this product under other listings, mitigating any claimed loss of revenue.

*Second*, under the law, the Defendant's claimed loss of enterprise value is not recoverable. The courts have consistently held that speculative damages, such as loss of

enterprise value, are not compensable because they are inherently uncertain and often based on numerous assumptions that may or may not prove to be true.

*Third*, the Defendant's claim of lost labor also lacks foundation. The Defendant alleges a loss of 20 hours of labor, but does not provide specifics such as the exact dates and times when this labor was expended, what specific tasks were undertaken during this time, or even when these 20 hours were spent. Without such detail, the Defendant's claimed loss of labor is unverifiable and should not be accepted.

*Fourth*, the Defendant alleges that *the beginning of April is the start of the peak sales season for outdoor exercise equipment*. However, a search can reveal that April is not the alleged peak sale season. Please refer to **Exhibit I**, an article titled "When Is The Best Time To Buy Home Exercise Equipment?" published on the website https://the-home-gym.com/. Additionally, please review **Exhibit J**, an article titled "When Is the Best Time to Buy Outdoor Gear?" published on nytimes.com.

In conclusion, due to its lack of sufficient detail and legal grounding, the Defendant's affidavit does not provide a valid claim of lost revenue and labor. Therefore, the Plaintiff respectfully requests that the Court dismiss these claims as unsubstantiated or request the Defendant to provide more credible grounds to allege.

## IV.   CONCLUSION

For the reasons and analysis above, the Plaintiff asks this Court to deny Plaintiff's Motion for Attorney Fees, Bond Damages and Sanction (the "Motion") [Dkt 49-53] and other reliefs as this Court deems proper and just.

Dated: May 15, 2023                                     */s/ Jiyuan Zhang*

                                                        Jiyuan Zhang, Esq