**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIANGSU HUARI WEBBING LEATHER CO., LTD., | Case No. 1:23-cv-02605-JLR |
| Plaintiff, | |
| v. | |
| JOES IDENTIFIED IN SCHEDULE A, | |
| Defendant. | |

**NINJASAFE LLC'S REPLY IN SUPPORT OF MOTION FOR BOND DAMAGES,
SANCTIONS, COSTS, AND ATTORNEY FEES**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................. 4

    A.  Plaintiff Misconstrues NinjaSafe's Request for Dismissal With Prejudice ..................... 4

    B.  With a Sanction of Dismissal With Prejudice, NinjaSafe Will Be a Prevailing Party
       Eligible to Receive Fees and Costs Pursuant to 35 U.S.C. § 285 ................................... 5

    C.  Plaintiff Fails to Specifically Discount its Repeated Instances of Litigation Misconduct
       and Bad Faith Intent ...................................................................................................... 6

    D.  The Court Has the Authority to Increase the Bond ........................................................ 8

    E.  NinjaSafe Was Wrongfully Enjoined .............................................................................. 9

III.  CONCLUSION ........................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009)..................................................................................... 5

*Au New Haven, LLC v. YKK Corp.*,
  Civ. No. 15-3411 (GHW), 2023 WL 2612204 (S.D.N.Y. Mar. 23, 2023)................................ 5

*Bolivar v. Pocklington*,
  975 F.2d 28 (1st Cir. 1992)...................................................................................... 5

*Ke v. J.R. Sushi 2 Inc.*,
  Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576 (S.D.N.Y. Feb. 7, 2022)....................... 5

*Lugosch v. Pyramid CO. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006)..................................................................................... 2

*Smart Study Co. v. Bichha123*,
  505 F. Supp. 3d 322 (S.D.N.Y. 2020)........................................................................ 9

**Statutes**

28 U.S.C. § 1927........................................................................................... 5, 6

35 U.S.C. § 285............................................................................................ 5, 6

**Rules**

Fed. R. Civ. P. 1............................................................................................... 1

Fed. R. Civ. P. 11........................................................................................... 5

Fed. R. Civ. P. 37........................................................................................... 5

Fed. R. Civ. P. 5.2......................................................................................... 2

Fed. R. Civ. P. Rule 41(a)................................................................................ 1

Hon. Rochon's Individual Rules of Practice in Civil Case 4.B....................................... 2

NinjaSafe LLC respectfully submits this Reply in support of its Motion for Bond Damages, Sanctions, and Attorney Fees (Dkts. 54-57) (NinjaSafe's "Motion").

## I.      INTRODUCTION

NinjaSafe's Motion established this Court has collateral jurisdiction to award bond damages, sanctions and attorney fees arising from Plaintiff's considerable litigation misconduct, bad faith infringement claims, failed pre-suit investigations, misuse of this Court and judicial process, and distorted notion of entitlement.  Having opened the door by suing NinjaSafe in its "Schedule A" case,[1] Plaintiff's argument that its Rule 41(a) dismissal has closed the door to NinjaSafe's requested relief is unsupported, unpersuasive, without merit, and dangerous.  *See* Fed. R. Civ. P. 1.

Plaintiff's Opposition (Dkt. 65) largely consists of incorrect, irrelevant, conclusory, and/or misleading factual and legal assertions.  Either Plaintiff failed to diligently digest NinjaSafe's Motion, as it abjectly failed in its pre-suit diligence on NinjaSafe, or Plaintiff is intentionally attempting to mislead the Court and distract it with irrelevancies.  Regardless, Plaintiff's Opposition further supports, rather than refutes, NinjaSafe's contentions and requested relief.

First, the notion that others, having filed Schedule A cases, allows Plaintiff to ignore applicable legal standards is puzzling.  Rather than deny or justify its misconduct, Plaintiff hides behind the age-old adage "everyone else is doing it."  Ironically, having done it so wrong here, this exact point is of utmost importance.  The Court should not condone Plaintiff's reckless misconduct and should enter a tailored sanction of a dismissal with prejudice, to discourage Plaintiff and others from similarly abusing the judicial process in filing improper Schedule A cases

---

[1] According to Plaintiff's counsel, a "Schedule A" case is now a mechanism in which one lawsuit is brought against massive numbers of defendants, filed under seal, so the defendants do not know they have been sued until after a temporary restraining order or preliminary injunction has issued.  Dkts. 66-66-2 (Zhang Decl., Exs. A and B).

*See* Dkt. 66-66-2 (Zhang Decl. Exs. A and B).  The Court also should do so to moot Plaintiff's overt threats of reprising its unsupportable patent infringement claim.  Dkt. 65 at 26 ("Plaintiff intends to initiate separate litigation…"

Moreover, Plaintiff should not be entitled to a reality in which it would suffer no consequences for improperly enjoining NinjaSafe and causing NinjaSafe significant financial and irreparable harm simply because it was named under seal, and then subsequently dismissed, to avoid reaching the merits.  If Plaintiff wants to paint NinjaSafe as unreasonable for investing energy in this action because it is "closed" then it is curious as to why Plaintiff would not dismiss NinjaSafe with prejudice as it did for at least eight other defendants.

Plaintiff's next excuse, that its request for a seal was "submitted to maintain confidentiality and avoid any potential manipulation or destruction of evidence by the defendants," is unavailing. Dkt. 65 at 7.  First, if anyone was engaging in manipulation, it was Plaintiff in requesting a seal when it was improper to do so.  The information that may be sealed without court approval, such as social security numbers, names of minor children, and other sensitive identifying information, is limited.  *See* Fed. R. Civ. P. 5.2 and Hon. Rochon's Individual Rules of Practice in Civil Case 4.B.  Court approval is required for all other information.  *See id.*  The standard for requesting a seal is that the proposed redactions must be narrowly tailored to serve whatever purpose justifies the redactions and is otherwise consistent with the presumption in favor of public access to judicial documents.  *See id.* (citing *Lugosch v. Pyramid CO. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  Counsel's unsupported, speculative fear over "manipulation" and "destruction of evidence" does not meet the standard.  Second, Plaintiff's excuse fails because the need for sealing was premised on an unavailable damage theory (recovery of ***defendants'*** profits).  *See* Dkts. 6 at 19-20, 8 at 7.  Third, by freezing defendants' Amazon accounts and taking down product without

notice, Plaintiff's **disrupted**, rather than preserved, the status quo pending a merits decision, given Plaintiff's admitted knowledge of defendants' accused ongoing actions since October 25, 2022.

Next, Plaintiff inexplicably dedicates several paragraphs to belatedly detailing the ease with which it could determine NinjaSafe's Delaware address, confirm it has served NinjaSafe while misspelling its counsel's name and bizarrely suggesting from this it is just a shell company, all of which only confirms its reckless and inadequate pre-suit investigation and misconduct here. It also validates the Court's concerns expressed at the April 17, 2023 hearing regarding the inadequacy of the investigation Plaintiff represented it conducted, including in connection with Plaintiff's Motion for Alternative Service of Process by Electronic Means, Tr. 63:9-13 (citing Dkt. No. 5 at 4), and confirms the Court's finding that NinjaSafe's Delaware address was easy to locate because it is "listed prominently on NinjaSafe's website", *Id* 21-23.  Cutting through the chaff, the NinjaSafe who appeared is the same Delaware company (i) who received Amazon's notice that its accused product was taken down and account was frozen, (ii) who established its monetary and irreparable harm from the wrongful enjoinment, and (iii) who now seeks its bond damages, sanctions and its fees. Plaintiff does not dispute this.  In fact, Plaintiff's facts detailing NinjaSafe's location demonstrates further litigation misconduct to have sued NinjaSafe in New York when venue for patent infringement is only in Delaware.[2]

For the reasons set forth in NinjaSafe's Motion and this Reply, NinjaSafe should be awarded its bond damages, Plaintiff should be sanctioned for its litigation misconduct by making the dismissal with prejudice, and NinjaSafe awarded its attorney fees for an exceptional case.

---

[2] Similarly, venue in this Court is improper for at least the Hyponix Delaware company, Dkt. 62 at 10) and Sell Below Cost (California company, Tr. 41:4-24).

## II.     ARGUMENT

### A.     Plaintiff Misconstrues NinjaSafe's Request for Dismissal With Prejudice

Preliminarily, it is unclear to NinjaSafe why Plaintiff fights a sanction of a dismissal with prejudice when it (1) has dismissed at least eight defendants with prejudice, and (2) emphasized in its Opposition that this action is "closed" Dkt. 65 at 10.  The reluctance to dismiss NinjaSafe with prejudice indicates that Plaintiff will follow through on its threat to resume this litigation against NinjaSafe, resulting in further harassment by Plaintiff.  Dkt. 65 at 26; *see also* Supp. Weiner Decl., dated May 23, 2023 at ¶ 5, Ex. 2[3].  Thus, the sanction requested is warranted.

First, Plaintiff misconstrues NinjaSafe's argument in its Motion.  Nowhere does NinjaSafe challenge the validity or effectiveness of its ultimate dismissal, which NinjaSafe notes did not occur on April 14, 2023 (Dkt. 65 at 12), but on April 20, 2023.  *See* Dkt. 39.  Nor does NinjaSafe request the Court vacate the dismissal.  *Rather*, NinjaSafe requests dismissal with prejudice as an appropriate sanction, narrowly tailored, given Plaintiff's litigation misconduct toward NinjaSafe.

Second, instead of addressing NinjaSafe's case law setting forth the Court's jurisdiction to enter sanctions and that dismissals with prejudice are appropriate sanctions, Dkt. 55 at 12-13, Plaintiff cites case law regarding the Court's jurisdiction to address the merits of claims following dismissal.  Dkt. 65 at 11-15.  This authority is inapposite for failing to address entering sanctions and failing to controvert NinjaSafe's position.

Third, Plaintiff incorrectly states that "[t]he sole legal basis on which the Defendant is relying to request the court to modify the judgment is entirely erroneous[]" urging that NinjaSafe "mistakenly applied Rule 37 to this case."  Dkt. 65 at 13.  NinjaSafe, however, neither cites nor

---

[3] NinjaSafe is not barred by Federal Rule of Evidence 408 from relying on the text exchanged contained in Exhibit 2 to Mr. Weiner's May 23rd declaration because the communication is offered for "another purpose" as contemplated by Rule 408(b).  The text exchange is offered to demonstrate bad faith litigation and future threatened litigation.

relies on a violation of Rule 37 as a basis for entering sanctions against Plaintiff.  *See* Dkt. 55.[4]

Rather, NinjaSafe's authority, *e.g.*, *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir.

2009), *Ke v. J.R. Sushi 2 Inc.*, Civ. No. 19-7332 (PAE) (BCM), 2022 WL 1496576, at *14

(S.D.N.Y. Feb. 7, 2022), and *Au New Haven, LLC v. YKK Corp.*, Civ. No. 15-3411 (GHW), 2023

WL 2612204, at *15 (S.D.N.Y. Mar. 23, 2023), were cited for their *reasoning*, which Plaintiff fails

to call into question, in granting a sanction of dismissal with prejudice, not because of a procedural

posture that made an award of sanctions appropriate.  *See* Dkt. 65 at 13-15.  Relevant here, *Ke*

cited *Bolivar v. Pocklington*, 975 F.2d 28, 31 (1st Cir. 1992) (emphasis added), which held that

"even after the voluntary dismissal of plaintiff's claims by notice and without prejudice, the district

court possessed the requested jurisdiction to impose sanctions under Rule 11 **and section 1927**[,]"

which also is directly on point.  Regarding Plaintiff's Rule 11 argument, it is a red herring.  Dkt.

65 at 16-19.  NinjaSafe did not urge violation of Rule 11 as grounds for sanctions. Rather, Hyponix

referred to Rule 11 as exemplary of the Court's inherent sanctioning power. *See e.g.*, Dkt. 55 at 8.

### B.    With a Sanction of Dismissal With Prejudice, NinjaSafe Will Be a Prevailing Party Eligible to Receive Fees and Costs Pursuant to 35 U.S.C. § 285

Plaintiff fails to address, and therefore does not oppose, NinjaSafe's argument that a

sanction of a dismissal with prejudice makes NinjaSafe a prevailing party, entitling this Court on

the present record to declare the case exceptional and award NinjaSafe its proven attorney fees of

$53,305.00.  *See* Dkt. 65 at 15-16; Dkt. 55 18-23.  Plaintiff only argues that, at present, NinjaSafe

is not a prevailing party.  Dkt. 65 at 15-16.  Thus, if dismissal with prejudice is an appropriate

sanction, the Court should find this case exceptional and award prevailing party NinjaSafe its

attorney fees.

---

[4] Plaintiff understand this, citing NinjaSafe's contention that "the Court may exercise its post-dismissal authority, pursuant to the Court's inherent authority, Rule 11, 28 U.S.C. § 1927, and/or 35 U.S.C. § 285…"  *Id.* at 13.

### C.      Plaintiff Fails to Specifically Discount its Repeated Instances of Litigation Misconduct and Bad Faith Intent

Plaintiff's Opposition completely ignores NinjaSafe's nearly seven pages detailing, in length, the numerous instances of litigation misconduct, *see* Dkt. 55 at 6-12, which forms the basis for sanctions pursuant to § 1927 and the Court's inherent authority (and exceptional case under § 285). *Id.* at 20.   Nor does Plaintiff respond to NinjaSafe's arguments that Plaintiff lacked a colorable basis of infringement by NinjaSafe, committed extensive litigation misconduct, and brought this case in bad faith, preemptively dismissing NinjaSafe and others to avoid addressing the merits of infringement, and to remedy the harm caused by the wrongful enjoinment and Amazon takedown, and fees incurred by NinjaSafe in defending itself against baseless claims brought by Plaintiff for an improper purpose. *Id.* at 20-23.   Rather than address or dispute the particulars, Plaintiff recites legal standards without any application to the facts at issue here, and offers conclusory statements that NinjaSafe does not detail "any reference to delays, misunderstandings, poor judgments, or overly zealous actions" or "frivolousness, harassment, or excessive costs." *Id.* at 21.

Curiously, Plaintiff now claims it had a colorable basis to bring infringement claims against NinjaSafe under the doctrine of equivalents.  Dkt. 65 at 20-22.  Yet, Plaintiff has never provided any claim element-by-element analysis, confirming a lack of a colorable claim for infringement. Contextually, as noted at the April 17th hearing, "Plaintiff [had] not made any arguments regarding the doctrine of equivalents." Tr. 59:2-3.  What Plaintiff's post hoc equivalents discussion bereft of details establishes is only the deficiency of and inability to cure Plaintiff's pre-suit investigation and lack of a colorable basis in filing this case.

Plaintiff's arguments as to why this litigation was not initiated in bad faith fail.  First, that Plaintiff has a presumptively valid registered patent does not necessitate that any and all

subsequent litigation of that patent is legitimate.  Dkt. 65 at 22.  Indeed, Plaintiff's only claim is for infringement, making validity irrelevant to institution.  Dkt. 8 at 7.  And as to infringement, NinjaSafe explained in its opening papers that Plaintiff failed to conduct a reasonable pre-suit investigation into whether it had plausible infringement claims against NinjaSafe.  *See* Dkt. 55 at 7-8.  Second, Plaintiff's entitlement to amendment as of right also is unavailing because that right expired a day after the Court's April 17th hearing where *Hyponix's counsel*, not Plaintiff's counsel, first raised the issue of no infringement under the doctrine of equivalents.  *See* Tr. 59:2-3.  Plaintiff did not belatedly seize this opportunity to file an amendment as of right pursuant to Rule 15 that asserted the doctrine of equivalents.  *See* Dkt. 8.  Worse, Plaintiff's amended complaint specifically did not raise the doctrine of equivalents.  *Id.*  Any further amendment would therefore be within the Court's discretion and, thus, not guaranteed.  Hence, Plaintiff's amendment (Dkt. 8) without adding a doctrine of equivalents claim and its subsequent failure to amend to include a doctrine of equivalents claim is even more indicative of bad faith in instituting suit against NinjaSafe.

Third, Plaintiff mischaracterizes NinjaSafe's arguments regarding Plaintiff's Schedule A complaint.  Dkt. 62 at 23.  That such a case might properly be brought against numerous defendants (provided that patent venue and misjoinder requirements are actually vetted and satisfied) does not excuse Plaintiff from the obligation to bring only plausible claims against all 163 defendants, including NinjaSafe, in good faith.  Given the timing in which Plaintiff moved for the TRO and began dismissing defendants without prejudice, and later with prejudice, the inference drawn is that this litigation was for the improper purpose of shutting down Plaintiff's competitors during peak sales season and seeking extortionate settlements.  *See* Dkt. 50 at 11, n.6.

Fourth, as discussed *supra* at 3, Plaintiff's new argument based on ***post-dismissal*** diligence, the self-manufactured suspicion whether NinjaSafe is a shell company – despite all the contrary

facts about NinjaSafe's identity and address and the Court like finding, Tr. 63:21-23, only highlights the deficiency of Plaintiff's ***pre-filing investigation*** that just assumed NinjaSafe was another opaque Chinese company.  Plaintiff cannot abandon or shift its duty to investigate simply because it may not be (although in this case it clearly was) easy to conduct the investigation required. Plaintiff's effort to manufacture entity confusion does not absolve Plaintiff of its bad-faith initiation of this suit against NinjaSafe.

Fifth, regarding sealed documents, Plaintiff only asserts that the complaint was not sealed with information regarding NinjaSafe.  *Id.* at 26.  This statement ignores the fact that Plaintiff refused to serve sealed documents, including the TRO, to NinjaSafe after NinjaSafe's Amazon account was frozen and it appeared in this action.  *See* Dkt. 55 at 11.  Plaintiff's only defense is that it provided NinjaSafe with the complaint and claim chart.  Dkt. 65 at 24.

Lastly, Plaintiff's reliance on Fifth Amendment rights regarding self-incrimination is of no relevance or consequence here.  Dkt. 65 at 27.  What is relevant is that Plaintiff does not rebut or disprove NinjaSafe's detailed recitation of evidence of Plaintiff's misconduct.  *See* Dkt. 55 at 6-12.

### D.    The Court Has the Authority to Increase the Bond

Plaintiff denies that the Court has authority to increase Plaintiff's security but offers no legal citation to support its conclusion.  It also ignores NinjaSafe's legal citations that the Court has remedial authority.  The Court should follow the law and increase Plaintiff's security as needed.

Plaintiff also contends that the TRO only restricted sales for one of NinjaSafe's product listings.  Dkt. 65 at 29.  Plaintiff's alternate ASIN argument is nonsensical as well as factually unsupported.  It amounts to positing that a car dealership wrongfully prohibited from selling Cadillac cars in Detroit is not damaged because it can still sell Chevrolet cars in Chicago. There is still lost volume and harm to the dealership in Detroit.

Further, NinjaSafe notes that Plaintiff's argument that April is not peak sales season is flawed. Dkt. 65 at 30. Plaintiff's "authority," a New York Times article, "When Is The Best Time To Buy Home Exercise Equipment?," refers to when the best *discounts* are available, not when peak unit sales occur. *Id.* (citing Ex. J). Regardless, the article supports that the spring season is a good time to purchase outdoor products.  *Id.*  ("March, new season of discounts" and "May, mega sales").

Additionally, Plaintiff sets forth yet another illogical, unsupported argument regarding Mr. Weiner's hourly rate.  Plaintiff would compare two different compensation metrics.  But a lawyer's flat fee charge $500 for work done independent of the time spent is irrelevant to whether Mr. Weiner's $200 an hour rate times the 20 hours of time spent is reasonable.  Dkt. 65 at 30.  Again, Plaintiff offers no evidence or other explanation, such as comparing hourly rates and/or salaries in the industry to refuse Mr. Weiner's hourly rate.  Instead, Plaintiff offers an apples-to-oranges, lawyer hourly rate compared to a chief executive officer's hourly rate, comparison that does little to support its contention that Mr. Weiner's hourly rate is unreasonable.  *Id.*

Lastly, without offering alternative evidence or explanation, Plaintiff states conclusively that past sales data is not indicative of future sales, and it is unreasonable of NinjaSafe to rely on past sales data to predict is harm.  Dkt. 65 at 30.  Past sales is a regularly used metric for determining harm.  *See e.g., Smart Study Co. v. Bichha123*, 505 F. Supp. 3d 322, 326-27 (S.D.N.Y. 2020).

E.      **NinjaSafe Was Wrongfully Enjoined**

Plaintiff's suggestion that less than a week is "sufficient and enough time" to file an answer to Plaintiff's complaint "to secure its alleged 'substantive' litigation" is ridiculous for two reasons. Dkt. 65 at 27.  First, less than a week is an unreasonable amount of time to suggest a party can submit an answer, especially when that is not required.  Second, to suggest that NinjaSafe wanted

to secure a substantive litigation is dishonest. It should not have to be said that virtually no defendant seeks out, let alone hopes to *secure* litigation. Plaintiff is, yet again, mischaracterizing NinjaSafe's arguments that Plaintiff's complaint lacked the ability to set forth meritorious claims as a desire to secure litigation.

Plaintiff's Opposition ignores that the Court received evidence and made findings *on the record*. And there is no reading between the lines in Plaintiff's Opposition – Plaintiff will sue NinjaSafe again, at least for infringement under the doctrine of equivalents. Dkt. 65 at 26 ("Plaintiff intends to initiate separate litigation…"); *see also* Supp. Weiner Decl., dated May 23, 2023 ⁋ 4 (Plaintiff has threatened further Amazon complaints). Plaintiff lacked initial diligence in asserting its infringement claim, did not mention the doctrine of equivalents, missed the deadline to amend its complaint to assert infringement under the doctrine of equivalents, received unfavorable findings by the Court regarding its diligence and infringement claims, and, as a result, decided to swiftly dismiss NinjaSafe to avoid the merits, all while preparing another infringement action. Dkt. 65 at 26; *see also* Supp. Weiner Decl., dated May 23, 2023 ⁋ 4 (Plaintiff has threatened further Amazon complaints). NinjaSafe urges the Court to sanction and stop Plaintiff in its tracks and to send a message to Plaintiff, and those like it, that they cannot heedlessly use the Court and its resources as a mere tool in its scheme to extort expeditious settlements from competitors facing the threat of mass Amazon takedowns costing defendants significant economic and irreparable harm.

## III.     CONCLUSION

For the reasons set forth in NinjaSafe's Memorandum of Law and this Reply, the Court should grant NinjaSafe's Motion for Bond Damages, Sanctions and Attorney Fees.

Dated: May 23, 2023

Robert M. Isackson (RI 4303)
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY 10601
T.914.821.9077
F.914.288.0023
isackson@leasonellis.com
lelitdocketing@leasonellis.com

*Attorneys for Defendant Hyponix Brands, Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on May 23, 2023, he following documents were served on all parties who have appeared in this case via the Court's CM/ECF system:

1. NinjaSafe LLC's Reply In Support Of Motion For Bond Damages, Sanctions, And Attorney Fees.

2. Supplemental Declaration of Robert M. Isackson and Exhibits 5 – 6.

3. Supplemental Declaration of Nir Weiner and Exhibits 1 and 2.

_____

Robert M. Isackson