UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIANGSU HUARI WEBBING LEATHER CO., LTD.,<br><br>                            Plaintiff,<br><br>-against-<br><br>JOES IDENTIFIED IN SCHEDULE A,<br><br>                            Defendants. | Case No. 1:23-cv-02605-JLR<br><br>**OPINION & ORDER** |

JENNIFER L. ROCHON, United States District Judge:

      Jiangsu Huari Webbing Leather Co., Ltd. ("Plaintiff") owns U.S. Patent No. 11,478,673 (the "'673 Patent"), which claims a particular design for an outdoor exercise product (the "Hanging Exercise Product"). ECF No. 8 ("Amended Complaint" or "Am. Compl.") ¶ 1. Plaintiff filed a sprawling complaint against 163 defendants for allegedly infringing the '673 Patent by selling similar products on Amazon and other online platforms. *Id.* ¶¶ 1, 7; *see* ECF No. 10. In connection with the lawsuit, Plaintiff applied *ex parte* for a temporary restraining order, which the Court granted. *See* ECF No. 12 (the "TRO"). Several defendants, including Hyponix Brands, Ltd. ("Hyponix") and NinjaSafe LLC ("NinjaSafe" and, together, "Defendants"), appeared and opposed the TRO's extension. *See* ECF Nos. 14-15, 24-25, 27, 29, 31. The Court denied Plaintiff's request to extend the TRO, ECF No. 34, after which Plaintiff eventually dismissed the case against all defendants, *see* ECF Nos. 45, 47. Hyponix and NinjaSafe now seek monetary damages, dismissal of the case with prejudice, and attorney's fees. ECF Nos. 50 ("Hyponix Br."), 55 ("NinjaSafe Br."). For the reasons set forth below, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff owns the '673 Patent, which was filed on March 21, 2020, and issued on October 25, 2022. Am. Compl. ¶ 14. The patent covers a rectangular-shaped buckle-and-belt mechanism, embodied in a Hanging Exercise Product that is sold online. *See id.* ¶¶ 17-18. Between June 2019 and April 2021, Hyponix was one of Plaintiff's distributors, buying and reselling large quantities of Plaintiff's product. *See* ECF No. 30 ("Liu Decl.") ¶¶ 2-5; Hyponix Br. at 3 n.2. On April 20, 2021, Hyponix stopped distributing Plaintiff's product and started selling a competing product. Liu Decl. ¶¶ 6-10. In December 2020, NinjaSafe also started selling a competing product. *See* NinjaSafe Br. at 7.

On March 28, 2023, five months after its patent issued, Plaintiff sought a TRO against 163 parties, including Defendants, for selling products that allegedly infringed the '673 Patent. ECF No. 6. The Court heard *ex parte* arguments from Plaintiff on March 31, 2023. *See* ECF No. 7. On April 4, 2023, the Court issued the TRO. *See generally* TRO. The Court restrained the parties from selling their accused products for fourteen days and ordered them to show cause at an April 17, 2023 hearing why a preliminary injunction should not issue. *Id.* at 4, 6. The Court required Amazon to freeze the parties' accounts, and the assets contained therein, for the same period. *Id.* at 5. The Court also ordered Plaintiff to post a security bond of $20,000. *Id.* at 9. Amazon froze NinjaSafe's account on April 10, 2023, NinjaSafe Br. at 11, and froze Hyponix's account on April 11, 2023, Hyponix Br. at 12.

On April 13, 2023, Plaintiff requested an extension of the TRO. ECF No. 13. On April 14, 2023, Hyponix appeared and opposed Plaintiff's request, seeking leave to show why its product did not infringe Plaintiff's patent. *See* ECF Nos. 14-15. That same day, Plaintiff voluntarily dismissed Hyponix without prejudice from this action. *See* ECF Nos. 16, 33. On April 16, 2023, Amazon unfroze Hyponix's account at Plaintiff's request. Hyponix Br. at 2.

2

During the April 17, 2023 order-to-show-cause hearing, the Court heard argument from Plaintiff and several defendants (including Hyponix and NinjaSafe) on the TRO, which was set to expire the next day.  *See* ECF No. 60 ("Tr.").  Defendants contested the TRO's extension, submitting evidence of their noninfringement and disputing Plaintiff's claim of irreparable harm.  *Id.* at 12:8-31:15; *see* ECF Nos. 27, 29.  Plaintiff confirmed that Hyponix's product did not literally infringe on the '673 Patent, Tr. at 53:7-10.  Plaintiff also did not rebut NinjaSafe's noninfringement arguments, *see* ECF No. 27 at 10-13; *see also* Tr. at 43:8-15.  The Court concluded that Plaintiff had not shown good cause to extend the TRO and allowed it to expire the next day, on April 18, 2023.  Tr. at 65:7-10.  Between April 20 and 27, 2023, Plaintiff voluntarily dismissed 18 additional individual defendants without prejudice, including NinjaSafe on April 20, 2023.[1]  *See* ECF Nos. 39, 41, 46.  On May 1, 2023, Plaintiff dismissed its case without prejudice against all remaining defendants, and the case was terminated.  *See* ECF Nos. 45, 47.

Hyponix and NinjaSafe each moved for damages under the bond, sanctions in the form of dismissal with prejudice, and attorney's fees.  Hyponix Br.; NinjaSafe Br.[2]  Plaintiff

---

[1] Plaintiff also voluntarily dismissed eight defendants *with* prejudice during this time.  *See* ECF Nos. 37-38, 41, 43.

[2] In support of its motion, Hyponix also submitted a declaration from Robert M. Isackson with accompanying exhibits, ECF No. 51; a declaration from Sevag Demirjian with an accompanying exhibit, ECF No. 52; a declaration from Gevin Rai with an accompanying exhibit, ECF No. 53; a reply memorandum of law, ECF No. 67 ("Hyponix Reply"); a supplemental declaration from Isackson with accompanying exhibits, ECF No. 68; and a notice of supplemental authority, ECF No. 74.  Hyponix also moved to seal Rai's declaration.  ECF No. 58.

In support of its motion, NinjaSafe submitted a declaration from Isackson with accompanying exhibits, ECF No. 56; a declaration from Nir Weiner with accompanying exhibits, ECF No. 57 ("Weiner Decl."); a reply memorandum of law, ECF No. 69 ("NinjaSafe Reply"); a supplemental declaration from Isackson with accompanying exhibits, ECF No. 70; a supplemental declaration from Weiner with accompanying exhibits, ECF No. 71; and a notice

opposed the motions. ECF Nos. 62 ("Hyponix Opp."), 65 ("NinjaSafe Opp.").[3] The motions are fully briefed and now pending before the Court. Because Hyponix's and NinjaSafe's motions mirror each other, the Court considers them, and Plaintiff's parallel opposition briefs, together. *See* NinjaSafe Br. at 3 n.2 ("For the Court's convenience, NinjaSafe structured its brief to parallel the brief of Defendant Hyponix, as many of the same facts, law and arguments are relied upon.").

## DISCUSSION

Defendants seek monetary damages under Plaintiff's posted bond for the TRO, sanctions in the form of dismissal with prejudice, and an award of attorney's fees. *See generally* Hyponix Br.; NinjaSafe Br. Plaintiff opposes these requests for monetary and nonmonetary relief. *See generally* Hyponix Opp.; NinjaSafe Opp.

As a preliminary matter, the Court confirms its jurisdiction to resolve Defendants' motions. Although Plaintiff voluntarily dismissed all defendants to the case under Federal Rule of Civil Procedure ("Rule") 41(a), the Court retains post-dismissal authority to consider collateral matters, including the type of relief requested here. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("the imposition of costs, attorney's fees, and" sanctions are not "judgment[s] on the merits of an action," but rather "require[] the determination of a collateral issue"); *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (affirming that the district court "clearly had jurisdiction to impose sanctions irrespective of

---

of supplemental authority, ECF No. 75. NinjaSafe also moved to seal exhibits to Weiner's supplemental declaration. ECF No. 72.

[3] In support of its opposition to Hyponix's motion, Plaintiff submitted a declaration from Jiyuan Zhang with accompanying exhibits, ECF No. 63; and a declaration from Steven Fairchild, ECF No. 64. In support of its opposition to NinjaSafe's motion, Plaintiff submitted a similar declaration from Zhang with accompanying exhibits. ECF No. 66.

the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case").

## I. Recovery Under the Bond

First, Defendants seek monetary damages for their wrongful enjoinment under the TRO. *See* Hyponix Br. at 15; NinjaSafe Br. at 13. Under Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Defendants may recover damages against the bond only if they were wrongfully enjoined and if they suffered damages proximately caused by the TRO. *Smart Study Co. v. Bichha123*, 505 F. Supp. 3d 322, 325 (S.D.N.Y. 2020).

### A. Wrongful Enjoinment

"A party has been 'wrongfully enjoined' under [Rule] 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990); *see also Guzman v. Loc. 32B-32J, Serv. Emps. Int'l Union*, 72 F.3d 260, 263 (2d Cir. 1995) (a party has been wrongfully enjoined if it was "ordered to do something it had a right to refrain from doing or to cease doing something it had a right to continue doing"). Importantly, "whether a party has 'been wrongfully enjoined or restrained' is not always coextensive with a final adjudication on the merits." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 137 (2d Cir. 2014). Voluntary dismissal does not, alone, entitle the defendant to such recovery; nor does the dissolution of a TRO. *See id.* at 140. Whether a defendant is entitled to recover "turns on a determination that the defendant was wrongfully restrained." *Id.* at 136. Moreover, "when the issuance of a TRO is followed by the plaintiff's prompt voluntary withdrawal of the

complaint as to a given defendant . . . , that withdrawal establishes as a matter of law that the defendant was wrongfully enjoined." *Smart Study*, 505 F. Supp. 3d at 325.

Considering this guidance, the Court finds that Defendants were wrongfully enjoined under the TRO. Plaintiff argues that the Court cannot find that Defendants were wrongfully enjoined because it did not conduct a full hearing or render a decision on the merits. *See* Hyponix Opp. at 29; NinjaSafe Opp. at 26. However, the Court had no occasion to do either, given that Plaintiff dismissed its claims against Defendants shortly after they appeared to oppose the extension of the TRO. "Under such circumstances, it would defy the purpose of Rule 65(c) to require" Defendants "to prove [their] innocence." *Smart Study*, 505 F. Supp. 3d at 325. In any event, the Court made findings on the record at its April 17, 2023 hearing that "Hyponix has pointed to at least four elements of claim 1 of the '673 patent that are not present in its product," while "Ninja Safe ha[s] also shown that [its] products may not infringe claim 1 and ha[s] raised questions of invalidity." Tr. at 55:20-23. If the Court did not determine then that Defendants were wrongfully restrained, it so now concludes for the same reasons based on the evidence submitted by Defendants. *See* ECF Nos. 15, 27.

Plaintiff argues that Hyponix is estopped from claiming wrongful enjoinment because it had informed Plaintiff in a letter that it would assume that "the takedown and court action was a mistake" if Plaintiff cooperated in unfreezing Hyponix's Amazon account by April 14, 2023. ECF No. 15-2 at 4; *see* Hyponix Opp. at 27-28. The Court is skeptical that Plaintiff reasonably relied on Hyponix's representation in dismissing Hyponix, given that Plaintiff also dismissed its case around the same time against 23 other defendants who did not make such a representation. *See* ECF Nos. 37-39, 41, 43, 46. Even if Plaintiff did rely on this representation, Hyponix never waived its right to seek bond damages under Rule 65(c). *See* ECF No. 15-2 at 4 ("Nothing herein shall be deemed an admission or waiver of any rights or

remedies of Hyponix, all of which are hereby expressly reserved."); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (defining waiver as "the intentional relinquishment or abandonment of a known right" (citation omitted)).

Plaintiff also concedes that at least Hyponix did not literally infringe on its patent, Tr. at 53:7-10, but relies instead on the doctrine of equivalents to argue that Defendants were not wrongfully enjoined, Hyponix Opp. at 29-30; NinjaSafe Opp. at 27.  The Court is unconvinced.  Plaintiff did not sufficiently plead infringement under the doctrine of equivalents in either its complaint or its amended complaint.  *See* ECF No. 1; Am. Compl.; Hyponix Opp. at 24 (implicitly acknowledging that the doctrine was not mentioned); NinjaSafe Opp. at 23 (same).  At the hearing on April 17, 2023, it was counsel for Hyponix, not Plaintiff, who first discussed whether Defendants had infringed the '673 Patent under the doctrine of equivalents.  *See* Tr. at 21:17-19, 28:7-31:6, 59:2-3.  After the hearing, Plaintiff did not request leave to supplement its amended complaint with allegations of infringement under the doctrine of equivalents.  Plaintiff's post hoc reliance on the doctrine suggests only that Plaintiff failed to adequately investigate Defendants' alleged infringement before seeking a TRO; it does not establish that Defendants' enjoinment was otherwise valid.

### B. Proximate Damages

Because Defendants were wrongfully enjoined, the Court turns to the question of damages.  "[A] wrongfully enjoined party is entitled to a presumption in favor of recovery." *Nokia Corp.*, 645 F.3d at 559.  However, the wrongfully enjoined party may recover only those damages "shown to have been proximately caused by the injunction . . . up to the amount of the bond." *Blumenthal*, 910 F.2d at 1056.  "In fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,

7

441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006), *aff'd*, 246 F. App'x 73 (2d Cir. 2007) (summary order). "[W]hile the fact of damages must be established definitely, the amount need not be proven mathematically." *Smart Study*, 505 F. Supp. at 326 (citation omitted).

Hyponix seeks $13,258.27 in lost sales and $736 in labor costs from its wrongful enjoinment. Hyponix Br. at 18. Based on its sales from April 1 to 10, 2023, Hyponix estimated that it lost $2,946.28 in profits during the five days that its Amazon account was frozen. Hyponix multiplied this number by 3.5 to approximate its lost enterprise value of $10,311.99. Hyponix calculated its labor costs by multiplying its owner's hourly rate by the twenty hours he spent "addressing issues regarding the TRO with counsel and Amazon." *Id*. The Court finds that the TRO proximately caused Hyponix to suffer damages with respect to its lost profits and labor costs. However, it finds Hyponix's claim for lost enterprise value too speculative to recover, at least under the justification provided by Hyponix's owner in his redacted declaration. *See* ECF No. 59 ¶¶ 10-11.

Plaintiff's remaining arguments that these damages are too speculative to recover under the bond are unavailing. *See* Hyponix Opp. at 31-32. While Amazon restricted the sale of Hyponix's product under one ID number, it froze Hyponix's entire account, limiting Hyponix's ability to mitigate damages from the TRO. Hyponix Opp. at 31; *see* Tr. at 47:13-18. Hyponix need not verify its labor costs by specifying the "exact dates and times when this labor was expended" or "what specific tasks were undertaken during this time" for the Court to deem those costs proximately caused by the injunction. Hyponix Opp. at 32. Nor does Hyponix's calculation for lost profit hinge on the claim that April is the "peak" sales season for outdoor exercise equipment. *Id.*

Similarly, NinjaSafe seeks $19,375.02 in lost sales and $4,000 in labor costs from its wrongful enjoinment.[4] NinjaSafe Br. at 16. The Court finds NinjaSafe's $10,641.51 in lost profits a better indicator of the damage proximately caused by the TRO than its lost revenue. *See* Weiner Decl. ¶¶ 11-12 (multiplying NinjaSafe's daily average profit during the fourteen days before the TRO by the nine days that NinjaSafe did not sell any of the allegedly infringing products). The Court also finds NinjaSafe's claimed labor costs a reasonable valuation of the time that NinjaSafe's CEO spent to comply with the TRO. *See id.* ¶ 19. Plaintiff's otherwise identical arguments against these damages, for the reasons discussed above, are unconvincing. *See* NinjaSafe Opp. at 29-30. Therefore, Hyponix is entitled to recover $3,682.28 under the bond; NinjaSafe is entitled to recover $14,641.51.[5]

## II. Sanctions

Next, Defendants seek sanctions against Plaintiff and Plaintiff's counsel in the form of their dismissal from the case with prejudice and an award of attorney's fees. Hyponix Br. at 19; NinjaSafe Br. at 18. Assuming the Court grants their dismissals with prejudice, Defendants identify 35 U.S.C. § 285 as an additional basis for recovering attorney's fees.

### A. Applicable Law

The Court's authority to impose sanctions is grounded first in its inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."

---

[4] NinjaSafe argues that it also incurred an accumulated loss of $50,237.10, which it attributes to NinjaSafe's post-TRO "reduction in sales and profits coupled with [a] loss of ranking" on the Amazon website. NinjaSafe Br. at 16-17. However, NinjaSafe appears not to seek damages for that accumulated loss under Plaintiff's bond. *See id.* at 16 ("NinjaSafe seeks lost sales damages of $19,375.02 and labor costs of $4000.00 as damages recoverable under Plaintiff's $20,000 bond.").

[5] Because Defendants' monetary damages under the TRO bond do not exceed the $20,000 amount of the bond, the Court need not consider its authority to retroactively increase the TRO bond.

9

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). That power "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). Through this power, a court may sanction a party or attorney "who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quotation marks and citation omitted). "When a district court invokes its inherent power to impose a sanction of attorneys' fees or to punish actions by an attorney . . . , the district court must make an explicit finding of bad faith." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023) (quotation marks and citation omitted). In other words, the court must find "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

A court may also, under 28 U.S.C. § 1927, impose costs, expenses, and reasonable attorney's fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." As with the imposition of an inherent-powers sanction, "[t]he imposition of sanctions pursuant to § 1927 . . . requires a finding of bad faith." *Rossbach*, 81 F.4th at 143. "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (first ellipses in original and citation omitted).

Under either source of authority, a claim is without color when it "lacks any legal or factual basis." *Schlaifer Nance*, 194 F.3d at 337 (emphasis omitted). Conversely, a claim is "colorable when it has some legal and factual support, considered in light of the reasonable

10

Case 1:23-cv-02605-JLR   Document 76   Filed 01/02/24   Page 11 of 15

beliefs of the individual making the claim." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-79 (2d Cir. 2000). "The question is whether a reasonable attorney . . . could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." *Schlaifer Nance*, 194 F.3d at 337 (emphasis omitted). "[B]ad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Id.* at 336 (citation omitted). Both findings "must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer*, 564 F.3d at 114. Whether to impose sanctions is ultimately left to the Court's discretion. *See, e.g.*, *Pereira v. 3072541 Can. Inc.*, No. 17-cv-06945 (RA), 2018 WL 5999636, at *2 (S.D.N.Y. Nov. 15, 2018) (under 28 U.S.C. § 1927); *Macolor v. Libiran*, No. 14-cv-04555 (JMF), 2015 WL 337561, at *2 (S.D.N.Y. Jan. 23, 2015) (inherent powers).

### B. Analysis

The Court is troubled by Plaintiff's conduct in this case. The Court finds particularly concerning the "clear discrepancies" between the protected elements of the '673 Patent and the products of many of the parties against which Plaintiff secured a TRO. Tr. at 58:8-10. During the April 17, 2023 hearing, Hyponix "pointed to at least four elements of claim 1 of the '673 patent that are not present in its product." *Id.* at 55:20-21; *see* ECF No. 28 ¶¶ 10, 12-13 (attaching pictures of Hyponix's product and marketing materials). NinjaSafe similarly showed that its product does not contain certain elements of the '673 Patent. ECF No. 27 at 10-13. The Court listed dozens of other parties whose products, according to Plaintiff's submissions, ECF No. 9-11, plainly lacked elements of the '673 Patent, Tr. at 55:25-58:7. Sixty-five of the allegedly infringing products did not have a "flat strap to receive the rectangular-shaped buckle," an element of the '673 Patent. *Id.* at 56:13-57:19 (quoting ECF No. 8-1 at 21). At least five products, had mounting members that are not rectangular-shaped

11

buckles, as set forth in claim 1 of the '673 Patent. *Id.* at 56:3-7. For 33 other products, Plaintiff's pictures of the allegedly infringing element were "either missing, completely blurry," or otherwise "flawed pictures that do not even show the mounting member clearly in order to evaluate potential infringement." *Id.* at 57:20-58:4. Additionally, Plaintiff did "not make any arguments regarding the doctrine of equivalen[ts]." *Id.* at 59:2-3. Because of these differences, the Court said that it "no longer accepts the allegedly representative samples of a claim chart" that Plaintiff had presented in its TRO application, *id.* at 58:8-10, and expressed "serious doubt . . . as to whether plaintiff and its counsel performed adequate investigation" into the 163 defendants' supposed infringement, *id.* at 55:15-19.

Other aspects of Plaintiff's conduct in this litigation suggest possible misconduct. First, in its TRO application, Plaintiff represented that most of the 163 parties were difficult to find and contact. *See* ECF No. 6 at 8 ("Many defendants, if not all, have obfuscated their physical location on their respective Amazon storefronts."); *see* ECF No. 5 at 4 ("[A]ddresses provided on the e-commerce stores indicate that the registrants are in China and other neighboring countries."). In practice, however, contact information for many of the parties was readily available. Hyponix, for example, was a prior distributor for Plaintiff, so its information should have already been known to Plaintiff. Liu Decl. ¶¶ 2-7; Tr. at 32:20-33:7. In any event, the Court was easily able to locate Hyponix's business address online, along with the addresses of several other parties. Tr. at 63:3-25. Plaintiff does not indicate that it tried with any diligence to locate these parties before seeking a TRO.

Second, Plaintiff's timing in filing and dismissing its lawsuit suggests an improper purpose. Plaintiff knew as early as June 2022 that its patent would soon issue, after which it could sue infringing parties. Liu Decl. ¶ 8. The '673 Patent issued on October 25, 2022. Am. Compl. ¶ 14. Hyponix and NinjaSafe began selling their allegedly infringing products in

November 2022 and December 2020, respectively.  Tr. at 16:21-22; NinjaSafe Br. at 7.  Despite knowing for years that its sales had suffered from competition with other sellers, Liu Decl. ¶ 7, Plaintiff sued in late March 2023, five months after its '673 Patent issued, Tr. at 61:1-4, Am. Compl. ¶ 14.  Plaintiff's delay in filing the TRO undercuts its supposed urgency, suggesting instead that Plaintiff timed its filing to sideline its competitors during a busy sales season.  *See Pet Life, LLC v. KAS Pet, LLC*, --- F. Supp. 3d ----, 2023 WL 5807769, at *3 (E.D.N.Y. Sept. 1, 2023) (collecting cases in support of the view that "[u]nexplained delay in the filing of an application for preliminary relief can undermine a showing of irreparable harm").  So too does the speed with which Plaintiff dismissed Hyponix from its case.  ECF Nos. 16, 45.  The pace and prevalence of Plaintiff's dismissals suggest to the Court that Plaintiff used Rule 41 as part of a broader strategy to freeze the accounts of its competitors, then withdraw its claim against any party that happened to object.

Third, Plaintiff disregarded the Court's order by disclosing the TRO to four other companies besides Amazon.  ECF No. 13.  The TRO clearly stated that it applied only to Amazon.  TRO at 1 n.1.  At the April 17, 2023 hearing, Plaintiff's counsel did not explain why he sent the TRO to these other platforms.  Tr. at 4:19-5:19, 8:8-9:3.

Fourth, Plaintiff failed to provide Hyponix with documents necessary for its defense.  In its TRO, the Court instructed that its order, Plaintiff's complaint, *ex parte* TRO application, and supporting declarations would be sealed only until "Amazon restrains Defendants' assets and accounts pertaining to the Infringing Products . . . or April 18, 2023."  TRO at 9.  Hyponix requested these documents after Amazon froze its account, ECF No. 15-2 at 3, but Plaintiff provided only a copy of certain website pages of Hyponix's product, ECF No. 18.  Without access to any of the other records that had been sealed, Defendants could neither ensure their compliance with the TRO nor respond to Plaintiff's arguments in opposing its

13

extension. Plaintiff claims, falsely, that Hyponix did not request these documents. Hyponix Opp. at 25. Plaintiff also notes that its original complaint was not sealed but does not otherwise explain why it never provided Hyponix with the records that were sealed. *Id.*

Despite these concerns, the Court does not lightly award sanctions and will not do so in this case. Plaintiff holds a valid patent for its Hanging Exercise Product, its claim was colorable against at least some of the parties, and it dismissed its lawsuit voluntarily at a very early stage in the litigation (presumably in light of the issues raised by the Court at the order to show cause hearing), before any of the defendants responded to the Amended Complaint. Defendants here were made whole for their losses under the bond. Although a close question, the Court exercises its discretion to deny Defendants' request for sanctions under its inherent powers and 28 U.S.C. § 1927. The Court thus need not address Plaintiff's various legal arguments regarding the propriety of dismissal with prejudice as a particular sanction. To the extent that Plaintiff and its counsel engage in similar misconduct in the future, however, the Court will not hesitate to impose sanctions.

### III. Attorney's Fees Under 35 U.S.C. § 285

Because the Court declines to dismiss Plaintiff's case with prejudice, it denies Defendants' request for attorney's fees under 35 U.S.C. § 285. In "exceptional" patent-infringement cases, the Court "may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. To qualify as "prevailing," however, a party must "[n]ot only . . . achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned." *Manhattan Rev. LLC v. Yun*, 919 F.3d 149, 152-53 (2d Cir. 2019) (per curiam) (quotation marks and citation omitted). Those requirements are not met here because Plaintiff voluntarily dismissed its case without prejudice. *See* ECF No. 45. "[S]uch an act is not 'judicially sanctioned' since no court action is required." *Magder v. Lee*,

No. 14-cv-08461 (JFK), 2015 WL 4887551, at *2 (S.D.N.Y. Aug. 17, 2015).  Nor does it "constitute a change in the legal relationship of the parties because the plaintiff is free to refile its action."  *Lead Creation Inc. v. Hangzhou Yueji E-Com. Co.*, No. 22-cv-10377 (JMF), 2023 WL 7413835, at *4 (S.D.N.Y. Oct. 11, 2023) (quoting *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007)).  Defendants concede that, without a dismissal with prejudice, they are not "prevailing" parties.  *See* Hyponix Br. at 23 ("If the Court awards [the Defendant] the sanction of a dismissal with prejudice, that would change the parties' legal relationship and make [the Defendant] a prevailing party."); NinjaSafe Br. at 21 (same).  Accordingly, the Court denies Defendants' motion for attorney's fees under 35 U.S.C. § 285.

## CONCLUSION

For the reasons previously stated, the Court rules as follows:

- Defendants' motions to recover damages against the TRO bond are GRANTED; Hyponix is entitled to recover $3,682.28 under the bond; and NinjaSafe is entitled to recover $14,641.51 under the bond;

- Defendants' motions for sanctions are DENIED; and

- Defendants' motions for attorney's fees under 35 U.S.C. § 285 are DENIED.

Dated: January 2, 2024
       New York, New York

                                        SO ORDERED.

                                        *Jennifer Rochon*
                                        _____
                                        JENNIFER L. ROCHON
                                        United States District Judge